## COMMONWEALTH *vs.* CARL SEPHEUS.

No. 11-P-160.

Hampden. January 17, 2012. - November 21, 2012.

Present: TRAINOR, MILKEY, & AGNES, JJ.

Further appellate review granted, 464 Mass. 1102 (2013).

*Controlled Substances. Practice, Criminal,* Required finding. *Evidence,* Intent, Expert opinion. *Witness,* Expert. *Intent. Drug Paraphernalia.*

At the trial of an indictment charging possession of cocaine with intent to distribute, the evidence was sufficient to sustain the defendant's conviction, where the inference of an intent to distribute was both reasonable and possible and amounted to more than mere conjecture and speculation based on the facts and circumstances that the defendant was found with three individually wrapped rocks of "crack" cocaine, had $312 in cash in his pocket, and carried no paraphernalia for ingesting the drugs; testimony by a police expert that several of those facts suggested that the defendant intended to distribute the drugs; and the permissible inferences that the defendant had been located in an area known for drug sales for at least one hour and was in the company of an individual who conducted a drug transaction in his presence. [767-773] MILKEY, J., concurring. AGNES, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on November 18, 2009.

The case was heard by *C. Brian McDonald,* J.

*Leslie H. Powers* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

TRAINOR, J. The Commonwealth charged the defendant, Carl Sepheus, with possession of cocaine with the intent to distribute, G. L. c. 94C, § 32A(*c*). At the close of the Commonwealth's case in a jury-waived trial, Sepheus filed a motion for a required finding of not guilty, which the judge denied. The defendant was convicted, and now argues in a timely appeal that the evidence was not sufficient to support a finding that he intended to distribute the three, separately wrapped rocks of "crack" cocaine that were found in his possession.

We conclude that there was sufficient evidence for a reasonable fact finder to have found the essential elements of the crime beyond a reasonable doubt, and the judge therefore correctly denied the motion for a required finding of not guilty. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 678 (1978). We therefore affirm the conviction.

*Background.* With the evidence viewed in a light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. at 677-678, the trial judge could have found the following facts: On September 30, 2009, Springfield police Officer William Lopes, an experienced narcotics investigator, received information[1] that the defendant, who was wanted on an outstanding warrant, was in the general area of 585 Wilbraham Road in Springfield.[2] After receiving this information at the start of his 4:00 p.m. to 12:00 a.m. shift, Lopes drove to the area in an unmarked police cruiser.[3] Lopes initially drove to the intersection of Bristol Street and Wilbraham Road, then expanded his search to include the Daily Mart convenience store and gasoline station at the intersection of Alden Street and Wilbraham Road a short distance away. He arrived at that location at or around 5:00 p.m. After circling around the parking lots of the Daily Mart and gasoline station, Lopes, with the aid of a photograph, observed the defendant standing with a small group of three to five males outside the Daily Mart. Lopes radioed for backup to assist him with the arrest. As Lopes waited for other officers to arrive, an individual who was not the defendant suddenly left the group and conducted what Lopes observed to be a drug transaction through the window of a vehicle, in plain view of the group of men and Lopes. This individual then walked back to the group. The group, including the defendant, then walked together into the Daily Mart. Officer Lopes, and seven to ten

---

[1]The record does not reveal the source of this information or any indication of its reliability.

[2]Lopes testified that this was a high crime area where numerous arrests for firearm violations and drugs had been made.

[3]This evidence was admitted without objection on direct examination and was referenced repeatedly by defense counsel on cross-examination. Other testimony concerning the contents of the informant's tip (that the defendant was armed and selling cocaine in that area) was excluded and is therefore not necessary nor appropriate to recite for any purpose here.

other officers who had responded to his call, entered the store and placed the defendant under arrest.[4]

Springfield police Officer John Wadlegger, who had responded to the scene in an unmarked police cruiser, transported the defendant to the police station. Before driving to the station, and based on the defendant's movements while in the backseat of the cruiser, Wadlegger searched the defendant. Inside the center pocket of the defendant's gray hooded sweatshirt, Wadlegger found three rocks of what appeared to be crack cocaine, each inside a small plastic baggie twisted off near the corner. A chemist later testified that one of the rocks was weighed and tested positive for cocaine. Wadlegger also found $312 in the defendant's pants pocket.

Wadlegger, like Lopes, was an experienced narcotics investigator. He testified that he found no smoking apparatus on the defendant, and that, in his experience stopping users of either cocaine or heroin, he usually found something on their person to ingest the drug. Wadlegger testified that not every user was arrested with a smoking apparatus but stated that such a circumstance was the exception to the very general rule. He testified that the packaging of the drugs found on the defendant was consistent with the street-level sale of narcotics, and that the total street value of the drugs was around sixty dollars. Wadlegger testified that the absence of any device to ingest the drug, the packaging of the cocaine, and the nature of the area where the defendant was arrested were consistent with possession with the intent to distribute the drugs.

*Discussion.* In considering whether a denial of a motion for a required finding of not guilty is proper, "[w]e review the evidence in the light most favorable to the Commonwealth to determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (emphasis original). *Commonwealth* v. *Little*, 453 Mass. 766, 771 (2009) (*Little*), quoting from *Commonwealth* v. *Wilson*, 441 Mass. 390, 401 (2004) (*Wilson*).

"The two basic elements for conviction of possession with

---

[4]In addition to the defendant, the only other person arrested by the police was Dwayne Griffith, the man who was observed to have made a drug sale outside the Daily Mart.

the intent to distribute cocaine are (1) knowingly possessing the drug and (2) intending to transfer it physically to another person." *Commonwealth* v. *Tavernier*, 76 Mass. App. Ct. 351, 355 (2010). The defendant does not challenge the sufficiency of the evidence on the possession element, but argues that evidence of the essential element of his intent to distribute was lacking. In this case, the defendant's intent to distribute "is a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had . . . by inference from all the facts and circumstances . . . ." *Commonwealth* v. *Keefner*, 461 Mass. 507, 517 (2012) (*Keefner*), quoting from *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997).

Here the defendant was found to possess three small individually wrapped rocks of crack cocaine, with a total weight of approximately .4 grams. In *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 731 (1992) (*Gonzales*), we ruled that although the defendant was arrested with only .32 grams of heroin, "[t]he fact that the amount of drugs seized was small does not, by itself, require a finding of not guilty to so much of the indictment as states 'intent to distribute.' A dealer's inventory of drugs may have been reduced before his arrest to a small amount by a number of sales."

In *Gonzales*, the conviction of possession with intent to distribute was affirmed based on factors that included the packaging of the .32 grams of heroin in ten glassine packets, which according to expert testimony was "consistent with distribution rather than personal use," the presence of a "scorpion" mark on each of the bags that was indicative of a dealer's brand name, and the defendant's possession of $167 in cash, despite being unemployed. *Ibid.* In this case, as in *Gonzales*, although the approximately .4 grams Sepheus possessed would not alone support a finding of intent to distribute, sufficient additional evidence was presented at trial that ultimately supports such a finding.

*Additional evidence.* Several factors have been acknowledged by this court and the Supreme Judicial Court to be probative, while not individually dispositive, of a defendant's intent to distribute. These include, inter alia, the manner in which the drugs were packaged, the amount of cash the defendant had on his person when arrested, and the absence of smoking para-

phernalia. See *Commonwealth* v. *Gollman*, 436 Mass. 111, 113, 116-117 (2002) (*Gollman*) (2.71 grams of crack cocaine and no smoking paraphernalia held to be sufficient evidence to uphold conviction); *Wilson*, 441 Mass. at 400-402 (one-half ounce of marijuana in twenty bags packaged for sale, no smoking paraphernalia, and $476 cash held to be sufficient evidence to uphold conviction); and *Little*, 453 Mass. at 768, 771-772 (fifteen bags of marijuana packaged for sale, $254 cash, and no smoking paraphernalia held to be sufficient evidence to uphold denial of motion for required finding).

In the present case the defendant possessed three rocks of crack cocaine, with a total weight of approximately .4 grams, packaged individually in small sandwich bags, twisted off near the corner, in a manner that Officer Wadlegger testified was "consistent with street level sale." The defendant also possessed no device with which to smoke or otherwise ingest the rocks of cocaine, and was arrested with $312 in cash on his person.[5] Furthermore, Officer Lopes testified that the area around the Daily Mart was "a high crime area" that has seen "numerous violations and arrests for narcotics, shootings, stabbings, [and] other violent offenses." Although the amount of contraband possessed by the defendant differs in each case, similar "plus factors" have contributed to the upholding of several past convictions for possession with intent to distribute. See *Gonzales*, *supra*; *Gollman*, *supra*, *Wilson*, *supra*.

Furthermore, the circumstances in which the police encountered Sepheus and his conduct prior to his arrest could have properly been considered by the judge as additional evidence supporting an inference of intent to distribute. See *Commonwealth* v. *Burke*,

---

[5]The presence of cash on the defendant's person has in some past cases been paired with evidence of the defendant's unemployment to indicate that the defendant was more likely to have obtained the cash from drug sales. See *Commonwealth* v. *Rivera*, 6 Mass. App. Ct. 947, 947 (1978); *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758-759 (1984). Although such evidence here would have bolstered the Commonwealth's case, in several cases the denial of a motion for a required finding has been upheld where cash was deemed probative of possession with intent to distribute, without any evidence of the defendant's employment status. See, e.g., *Wilson*, 441 Mass. at 401-402 ($476 cash without any evidence of unemployment). See also *Little*, 453 Mass. at 768, 771-772 ($254 cash without any evidence of unemployment); *Commonwealth* v. *Hernandez*, 77 Mass. App. Ct. 259, 265-266 (2010) ($56 cash without any evidence of unemployment).

44 Mass. App. Ct. 76, 79-80 (1997); *Commonwealth* v. *Dessources*, 74 Mass. App. Ct. 232, 238 (2009) (where marijuana packaged for sale was found on defendant, conviction of possession with intent to distribute was affirmed in part because arresting officer "observed three other individuals seated near the defendant passing a pipe commonly used to smoke marijuana"). Here, the defendant was observed standing with a group of men that included an individual whom Officer Lopes observed conduct a "drug transaction" through the window of a vehicle. Sepheus was subsequently seen walking with that same group of men into the Daily Mart. The judge also could have properly inferred that Sepheus had been located in the general area of his arrest[6] from at least about 4:00 P.M., the time the officers received the information regarding his whereabouts, to approximately 5:00 P.M., the time of his arrest.[7] The judge could have reasonably concluded that a user would not likely remain at the point of purchase for such an extended period of time.[8]

[6]Officer Lopes was directed to the Bristol Street and Wilbraham Road area, which Officer Wadlegger described as being in the "general area" of where the defendant was ultimately found, at the intersection of Alden Street and Wilbraham Road.

[7]The police observed Sepheus only for as long as was necessary to identify him, because they were not conducting a drug investigation, but were at the scene to execute an arrest warrant. Only later did Sepheus's extended presence in the general area of his arrest become relevant and probative of his intent to distribute. All relevant times and locations were admitted in evidence without objection and are therefore available for their full probative value.

[8]The dissent invokes the "mere presence" doctrine to discount entirely the defendant's proximity to the drug transaction. However, on the facts of this case the doctrine is misapplied. The "mere presence" cases discourage the practice of finding either (1) constructive possession of contraband or (2) evidence of joint venture solely from a defendant's physical proximity to contraband or a possessor of contraband. See *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 147 (2008) ("mere presence in the apartment with knowledge that drugs are present is not enough to show constructive possession"); *Commonwealth* v. *Deane*, 458 Mass. 43, 50 (2010) ("Mere presence is insufficient to establish joint venture liability"). This case, however, is neither a constructive possession case nor a joint venture case. Rather, the defendant was apprehended while in *actual* possession of three rocks of cocaine and more than $300 in cash. The only element that was inferred in part from his proximity to a drug deal was his intent to distribute the drugs he *already actually possessed*, not those possessed by the other dealer. Contrast *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980) ("presence with knowledge of the planned act is insufficient alone to be the basis of a *conviction of a person for the acts*

The dissent states that the Commonwealth's evidence here is equally probative of innocence as it is of guilt. More specifically, it argues that the evidence supports an inference that Sepheus was a drug buyer as much as it supports an inference that he was a drug seller, and that to conclude the latter requires an impermissible speculative leap.[9] We do not agree. Considering, as we must, "all the facts and circumstances," *Keefner*, 461 Mass. at 517, and the proper inferences to be drawn from such facts and circumstances, we conclude that an individual arrested in possession of crack cocaine packaged for sale, with an amount of cash in excess of $300 in his pocket, in possession of no apparatus to ingest the drug, who was first observed standing in an area known for narcotics trafficking in a group that included an individual whom an arresting officer observed make a drug transaction, is more likely to be a seller than a buyer of crack cocaine. See *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005), *S.C.*, 450 Mass. 215 (2007), *S.C.*, 460 Mass. 12 (2011) ("If, from the evidence, conflicting inferences are possible, it is for the [fact finder] to determine where the truth lies, for the weight and credibility of the evidence is wholly within [the fact finder's] province").

Additionally, this conclusion is supported by Officer Wadlegger's expert testimony at trial. Wadlegger's testimony was germane, because the ability to distinguish between drugs possessed for the purpose of distribution and those for personal use "is not a matter within the common experience of [fact finders]." *Little*, 453 Mass. at 769, quoting from *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 457 (2006). As a result, judges have allowed police officers with experience in narcotics investigation to give their expert opinion as to whether the facts

---

*of another*" [emphasis supplied]); *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 330 (2010) ("[E]vidence that a defendant associated with persons who committed *the crime* does not lead to an inference that he also participated in *the crime*" [emphasis supplied]). Here, the defendant was charged with intending to distribute the drugs on *his* person at the time of his arrest, and the "facts and circumstances" at the time of his arrest help support the judge's reasonable inference that he had the intent to do so. Cf. *Keefner*, 461 Mass. at 517 (probable cause on motion to suppress).

[9]For this proposition the dissent cites to a line of cases beginning with *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962).

of the case were more consistent with distribution or with personal use. See *Gollman*, 436 Mass. at 115-116; *Wilson*, 441 Mass. at 400-401; *Little*, 453 Mass. at 768-770. In this case, Officer Wadlegger testified that the crack cocaine found on Sepheus suggested that he was a distributor as opposed to a buyer of drugs, and the officer based this opinion on, inter alia, the manner in which the drugs were packaged, the absence of smoking paraphernalia, and the high incidence of crime in the area where Sepheus was arrested.[10,11,12] The judge could have properly considered Wadlegger's testimony to support an inference of an intent to distribute. See *Wilson*, 441 Mass. at 401-402; *Little*, 453 Mass. at 769.

*Conclusion.* In this case, the defendant was found with three individually wrapped rocks of crack cocaine, had $312 in cash in his pocket, and carried no paraphernalia for ingesting the drugs. A police expert testified that several of these facts suggested that the defendant intended to distribute the drugs he possessed. Further, the judge could have inferred that the defendant had been located in an area known for drug sales for at least an hour, and was in the company of an individual who conducted a drug transaction in his presence. The inference of an intent to distribute based on these facts and circumstances is both "reasonable and possible," *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 54 (1975), and amounts to more than mere "conjecture and speculation." *Commonwealth* v. *White*, 452 Mass. 133, 136

---

[10]The judge did not make a specific finding that Wadlegger was qualified to act as an expert witness. However, a judge is not required to do so in the absence of a request by the defendant. See *Little*, 453 Mass. at 770 n.3.

[11]Wadlegger testified that when he "stop[s] somebody that's a user of either cocaine or crack cocaine or heroin, they usually have something on their person normally, to ingest that drug." Although he later conceded, on cross-examination, that not every user ever arrested was found to possess a crack pipe at the time, his testimony nonetheless was that the absence of such paraphernalia was the exception to the general rule, and was more indicative of selling than buying drugs.

[12]The fact that some of Wadlegger's opinion was based on the inadmissible content of the informant's tip goes to the weight, not the admissibility of the remainder of his expert opinion. Consequently, although some of Wadlegger's testimony was struck, his identification of the factors mentioned above as probative of an intent to distribute was not and therefore was properly before the judge. Compare *Commonwealth* v. *Pena*, 455 Mass. 1, 22 (2009).

(2008), quoting from *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991). The judgment is affirmed.

*So ordered.*

MILKEY, J. (concurring). I write separately for two reasons. First, I want to note my disagreement with the conclusion the majority opinion draws with respect to how long the defendant had been at the gasoline station. Even reading the evidence in the light most favorable to the Commonwealth, the most that could be said is that the police had information that — an hour before they found the defendant at the Daily Mart convenience store and gasoline station — the defendant reportedly was somewhere in the general vicinity.[1] That fact has no bearing whatsoever on the question whether the defendant intended to distribute the drugs found on him.

Second, I want to note my discomfort with the extent to which the Commonwealth has sought to rely on opinion testimony to prove the ultimate factual issue in dispute. Such efforts are particularly troubling in light of the fact that the police expert here acknowledged that he formed his opinion "predominantly" based on facts that never came into evidence, that were not independently admissible, and that were of questionable reliability. Nevertheless, the only issue the defendant has raised on appeal is the sufficiency of the evidence, and — on that narrow question — I ultimately agree that the evidence was sufficient (if barely so). See *Commonwealth* v. *Farnsworth*, 76 Mass. App. 87, 98-99 (2010) (sufficiency of evidence "is to be measured upon that which was admitted in evidence without regard to the propriety of the admission").

---

[1]The unidentified informant had told police that the defendant "would be in the Bristol Street and Wilbraham Road area." Officer Lopes testified that the defendant was not actually found in that specific area, but instead was located only after the police "expanded out our scope of the area." The police eventually found the defendant at the intersection of Wilbraham Road and Alden Street. Although there was testimony from which it could be inferred that this location was "in the general area of" where the informant had said the defendant could be found, *ante* at note 6, there was no testimony about how close the two locations specifically are to each other. And this leaves aside the fact that the judge expressly admitted the testimony about the informant's tip not for its truth but instead solely to explain the conduct of the officers.

AGNES, J. (dissenting). "Facts are stubborn things, and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."[1]

The Commonwealth's case consists of evidence that the defendant had possession of three plastic "twists," each containing a small rock of "crack" cocaine,[2] along with $312 in United States currency, in unknown denominations. Based on this evidence, and conjecture from evidence that is as probative of possession for personal use as it is of possession with intent to distribute, the majority concludes that the judge below was correct in denying the defendant's motion for a required finding of not guilty on so much of the indictment as charged possession with the intent to distribute. This result finds no support in any previous decision by this court or the Supreme Judicial Court, and is incompatible with the constitutionally based standard, enunciated in *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979), and *Commonwealth* v. *Latimore*, 378 Mass. 671, 678 (1978), by which we must test sufficiency of the evidence claims like the one presented in this case. Accordingly, I respectfully dissent.

1. *The evidence.* I disagree with my colleagues in the majority about what evidence was available for the judge's consideration.

First, while it is true that this case originated with a tip from an informant,[3] the contents of the tip were not admitted for the truth of the matters asserted, and thus cannot supply the basis for an inference that the defendant was in the general area where he was arrested from between 4:00 P.M. and 5:00 P.M.[4] Compare *ante* at 770.

---

[1]McCullough, John Adams 68 (Simon & Schuster 2001), quoting John Adams, Esq., summation in defense of the soldiers in the Boston massacre trials (December 4, 1770), Legal Papers of John Adams 269 (Wroth & Zobel eds. 1965). The most authoritative account of the trials and John Adams's role in them appears in Zobel, The Boston Massacre (W.W. Norton & Company 1970).

[2]The contents of one of the three plastic twists was analyzed and was found to be cocaine. The contents of that particular bag weighed 0.13 grams.

[3]The informant, who was not known to the witnesses in this case, was not identified nor shown to be reliable. Officer Wadlegger, the Commonwealth's second witness, identified the recipient of the tip as Sergeant Kent.

[4]A timely objection to testimony about the tip was allowed.

Commonwealth *v.* Sepheus.

Second, the police observations of the defendant's conduct prior to his arrest took place over the span of a minute or two at the most.[5] Compare *ante* at 770.

Third, while it is true that another man with whom the defendant was standing when he was first seen by the police was observed to make what appeared to be a hand-to-hand sale of

---

[5]When Officer Lopes was asked to estimate the length of time during which he had made observations of the defendant before his arrest, the following exchange occurred:

> *Q.:* "Can you tell the judge the total amount of time you were actually on location from the point you first arrived to the point in time you actually entered the store? How much time are we actually talking about?"
>
> *A.:* "Very short. A minute to — until we entered the store?"
>
> *Q.:* "Yes, sir."
>
> *A.:* "A minute to two minutes."

The majority opinion states that the trial judge could take into consideration that a person who was a drug user but not a drug seller would not likely remain at the point of purchase for "an extended period of time." *Ante* at 770. Not only is this view of the evidence unsupported by the direct testimony of Officer Lopes, quoted above, but it is also at odds with the testimony of Officer Lopes about his search for the defendant. Officer Lopes did not testify that he went directly to the location of the arrest at the Daily Mart at 585 Wilbraham Road. Rather, he testified that he first went to the "Bristol Street and Wilbraham Road area." We can take judicial notice of the fact that this location is six streets and about 2,000 feet away from the Daily Mart, which is located in an easterly direction from Bristol Street at 585 Wilbraham Road. See Mass.G.Evid. § 201(c) (2012). See also *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69 n.9 (1997). However, Officer Lopes testified further that he did not find the defendant in that location and expanded his search by traveling on Wilbraham Road "to the area of Alden Street." There, according to Officer Lopes, he made an observation of the defendant "in front of the Daily Mart." The testimony given by Officer Wadlegger was that he went to "the area of 585 Wilbraham Road." However, the only reasonable inference to draw from his testimony is that Officer Wadlegger was part of the backup response called for by Officer Lopes when the defendant was spotted in the vicinity of the Daily Mart.

Thus, the statement by the majority that "[t]he judge also could have properly inferred that Sepheus had been located in the general area of his arrest from at least about 4:00 P.M., the time the officers received the information regarding his whereabouts, to approximately 5:00 P.M., the time of his arrest," *ante* at 770, is not supported by any admissible evidence.

Locations and distances referred to in this note are based on data supplied as of June 12, 2012, by Google Maps at http://maps.google.com.

drugs to someone in a motor vehicle, there is no evidence linking the defendant to this other person.[6] Compare *ante* at 770.

Fourth, Officer Wadlegger's contribution as an expert witness was very limited, and, for reasons discussed *infra*, of dubious validity. The record indicates he offered only two opinions relating to the central issue of the defendant's intent: (1) that the drugs possessed by the defendant were packaged and of a size "consistent with street level sale"; and (2) that the absence of a pipe or implement for smoking crack cocaine on the defendant's person indicated he was "not a user." He did not opine about the significance of the money found in the defendant's pocket. Neither did he opine that the defendant's proximity to a drug sale had significance, or that the defendant's movements were indicative of a joint venture. Furthermore, on cross-examination, he made concessions that undermined the probative value of his other opinions.[7] However, of special significance is Officer Wadlegger's admission on cross-examination that his opinion that the defendant was a drug dealer was based "predominantly on information that was supplied by outside sources."[8] For the reasons discussed *infra*, this concession calls into question the probative value of his expert witness testimony.

---

[6]The other person arrested for the hand-to-hand sale was later identified as Dwayne Griffiths. There is no evidence connecting the defendant to Griffiths beyond the fact that they were observed by Officer Lopes standing in a group of three to five males for a few moments before the individuals entered the Daily Mart and with the group for a minute or two inside the Daily Mart. Officer Lopes testified, for example, that the defendant did not wave at any cars or approach any vehicles and did not assist Griffiths. In fact, Officer Lopes conceded that the defendant was approached and arrested inside the Daily Mart on account of the outstanding warrant and not based on a suspicion that he was involved in drug sales.

[7]On cross-examination, Officer Wadleggger conceded that (1) he has arrested and charged persons with simple possession of crack cocaine who did not have possession of a pipe or implement for smoking the drug; (2) he has arrested and charged persons in possession of more than three rocks of crack cocaine with simple possession; and (3) three rocks of crack cocaine could be consumed in an hour or two and are less than a day's supply for an occasional user.

[8]The reference here is to the unknown informant, whose reliability was never established. In fact, based on the testimony of Officer Lopes about his search for the defendant and the absence of a firearm or weapon on his person, the information reported by the informant was clearly not reliable.

2. *Unreasonable factual inferences.* The Commonwealth may satisfy the *Jackson-Latimore* due process standard based on reasonable inferences drawn from circumstantial evidence. See *Commonwealth* v. *Degro*, 432 Mass. 319, 325 (2000). It is only necessary that the inferences drawn from the facts be reasonable and possible. *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 54 (1975). However, when the relationship between the facts and the inferences drawn from those facts is not one that a rational person would regard as reasonable, inference crosses over into the realm of conjecture. See *James* v. *United States*, 39 A.3d 1262, 1269 (D.C. 2012).[9]

Here at least two of the factual elements of the case relied upon by the majority do not support an inference that is more consistent with the defendant's guilt than his innocence on so much of the indictment as charges possession with the intent to distribute.

a. *Defendant's presence in a high crime area.* As noted above, the majority's observation that the judge could have inferred that the defendant was in the vicinity of the Daily Mart and gasoline station "from at least about 4:00 P.M., the time the officers received the information regarding his whereabouts, to approximately 5:00 P.M., the time of his arrest," *ante* at 770, is not supported by the record. The only way such an inference could be drawn is to accept as credible the content of the

---

[9] "As the name 'circumstantial evidence' suggests, the strength of a particular piece of evidence turns on the specific circumstances that accompany the evidence. Wigmore observed that, '[a]side from autoptic proference, . . . all evidence *must involve an inference from some fact to the proposition to be* proved.' See 1A John Henry Wigmore, Wigmore on Evidence § 25 (Tillers rev. 1983). But as the inferential leap between the fact and the proposition to be derived grows, the probative value of the evidence diminishes. See Irene Merker Rosenberg & Yale L. Rosenberg, 'Perhaps What Ye Say Is Based Only on Conjecture' — Circumstantial Evidence, Then and Now, 31 Hous. L. Rev. 1371, 1385, 1423 (1995)." *United States* v. *Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (footnote omitted). Much the same point was made in *Tose* v. *First Pa. Bank, N.A.*, 648 F.2d 879, 895 (3d Cir.), cert. denied, 454 U.S. 893 (1981): "The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncracies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow from a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts."

informant's tip. However, the judge did not admit this evidence for its truth. A fair reading of Officer Lopes's testimony is that no more than a minute or two elapsed from when the defendant was first spotted at the Daily Mart until he was arrested inside the store. Prior to this, the whereabouts and activity of the defendant were unknown, and the whereabouts and activity of Dwayne Griffiths, see note 6, *supra*, were unknown.[10] Thus, in this case, the mere fact that the defendant was present in a so-called high crime area sheds no light on whether the defendant's criminal activity consisted of unlawful possession or of unlawful possession with the intent to distribute, for obviously such locations are where both buyers and sellers of drugs congregate.[11] Contrast *Commonwealth* v. *Rivera*, 425 Mass. 633, 648-649 (1997) (police officers observed defendant make several hand-to-hand exchanges; evidence that incidents were in "an area known for drug dealing" buttressed inference that the observed transactions were drug deals).

b. *Defendant's proximity to a person who sold drugs.* The evidence also is not sufficient to permit the fact finder to infer a connection between the defendant and Griffiths, who was observed to sell drugs — that is, there is no evidence on which to base an inference that because Griffiths engaged in a drug sale, the defendant intended to do so also. See *ante* at 770. As noted above, the evidence is that the defendant was observed in the presence of Griffiths for only a minute or two. There is no

---

[10]Furthermore, the majority appears to assume that the evidence that the defendant possessed the drugs for personal use depends on the belief that he bought them from Dwayne Griffiths. See *ante* at 770 ("[A] user would not likely remain at the point of purchase for such an extended period of time"). The Commonwealth did not raise this argument below. Here, the defendant has no burden of proof with regard to where he purchased or acquired the three rocks of crack cocaine. Certainly, we may assume there were potential sources other than Dwayne Griffiths.

[11]Caution must be exercised in relying on the general character of a location as a "high crime" area because "so-called high crime areas are inhabited and frequented by many law-abiding citizens who are entitled to be protected against being stopped and frisked just because of the neighborhood where they live, work, or visit. See, e.g., *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001). The term 'high crime area' is itself a general and conclusory term that should not be used to justify a stop or a frisk, or both, without requiring the articulation of specific facts demonstrating the reasonableness of the intrusion." *Commonwealth* v. *Johnson*, 454 Mass. 159, 163 (2009).

evidence of what the defendant or Griffiths was doing, or even whether they were in proximity to each other, before the brief observation made by Officer Lopes. The only way to establish an association between the two is to engage in conjecture and speculation, because mere presence at the scene where a crime is committed is not probative of guilt.[12] "Indeed, [even] presence with knowledge of the planned act is insufficient alone to be the basis of a conviction of a person for the acts of another." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). See also *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970) ("There was evidence that the defendant knew the three persons who entered the liquor store and committed the robbery and assault, that he associated with them, and that he was in their company both before and after the robbery. But that, without more, is not enough to convict the defendant on either charge. There can be no finding of guilt by association"). Even less does the evidence here permit an inference that the defendant himself intended to commit the same act as another person merely because they were standing in a group together for a minute or two.

The ability to distinguish between the possession of drugs for the purpose of distribution and possession for personal use "is not a matter within the common experience of [fact finders]."

---

[12] "[E]vidence that a defendant associated with persons who committed the crime does not lead to an inference that he also participated in the crime." *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 330 (2010). Accord *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972). "Indeed, presence with knowledge of the planned act is insufficient alone to be the basis of a conviction of a person for the acts of another." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). See also *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970). Compare *Commonwealth* v. *Gonzalez*, 47 Mass. App. Ct. 255, 257-258 (1999) (defendant observed doing acts in collaboration with other; sequence of actions more consistent with selling). The Commonwealth quotes from *Commonwealth* v. *DeJesus*, 48 Mass. App. Ct. 911, 912 (1999), where the court observed that "[p]eople do not ordinarily engage in repetitive crimes in the presence of someone who is not a collaborator." This quote is taken out of context and offers no support for the Commonwealth. In *DeJesus*, the facts indicated that "the defendant was gathered with the other occupants in a small bedroom in which he was surrounded by drugs, cash, and packaging materials; [this] suggests a close connection between him and the heroin sales operation; drug sales had been conducted over a period of time with several buyers while the defendant was in the apartment and, therefore, a witness to those transactions." *Ibid.*

*Commonwealth* v. *Little*, 453 Mass. 766, 769 (2009), quoting from *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 457 (2006). The majority tries to have it both ways; it attaches significance to an expert opinion because nonexperts would not understand possession with intent to distribute, while simultaneously asserting, based *solely* on its own, nonexpert intuition, that the defendant's proximity to a person who sold drugs once in his presence is indicative of his own intent to distribute.

3. *The absence of traditional factors considered probative of an intent to distribute.* a. *Quantity of drugs.* The quantity of cocaine possessed by the defendant (approximately .4 grams) is not an amount that alone may raise an inference of an intent to distribute. See note 15, *infra*. See also *Commonwealth* v. *Acosta*, 81 Mass. App. Ct. 836, 840-841 (2012) (3.16 grams of cocaine not sufficient quantity to alone raise inference of intent to distribute).

Further, none of the traditional factors that allow a reasonable inference to be drawn that a defendant's possession of a small quantity of drugs was, nonetheless, with the intent to distribute are present in this case.

b. *Packaging of the drugs.* The testimony by Officer Wadlegger that the size and packaging of the three twists of crack cocaine found in the defendant's pocket was consistent with "street level sale" is not probative of intent to distribute as opposed to possession for personal use. See *Commonwealth* v. *Acosta, supra* at 841 ("Nor was there anything distinctive or unique about the five twist bags [of cocaine] to indicate they were intended for transfer or sale as opposed to personal use"). There was no expert testimony or other evidence that purchasers of street-level quantities of drugs alter the packaging of the drugs upon receipt. Further, there was no expert testimony or other evidence suggesting that drugs purchased on the street are consumed immediately after they are purchased or within any particular period of time. The reasoning employed by Officer Wadlegger in recommending that the fact finder draw an inference that the defendant intended to sell the drugs rather than possess them for personal use on the basis of such evidence is nothing more than "speculation based upon a generalization." *Commonwealth* v. *Murphy*, 34 Mass. App. Ct. 16, 18 (1993).

The mere fact that an expert states such speculation as an opinion does not make it any less speculative.

c. *Conduct of the defendant.* In other cases involving small quantities of drugs, the circumstances in which the police encounter the defendant can signal whether his role is as a seller or a user. In *Commonwealth* v. *Burke*, 44 Mass. App. Ct. 76, 76-77, 79-80 (1997), the police observed the defendant holding a clear plastic envelope containing a white powder, while the person he was conversing with took some currency out of his pocket. When the defendant saw the police approaching, he yelled "cops" and tried to flee. He was subdued by the police, who found the plastic bag clenched in his hand. It contained 2.88 grams of cocaine. The police also found ten glassine bags, bundled together, containing .21 gram of heroin and a small quantity of marijuana in his pockets. Although the defendant argued there was insufficient evidence to prove beyond a reasonable doubt he intended to distribute the heroin, the court held the evidence that at the time he possessed the heroin he was engaged in the sale of another drug, along with the packaging of the heroin and the fact he possessed three drugs, was sufficient to warrant a rational fact finder in finding intent to distribute the heroin beyond a reasonable doubt. See *id.* at 79-80.[13] In the present case, by contrast, there is no evidence of the defendant's conduct, either before or after his arrest, that suggests his possession was with the intent to distribute as opposed to personal use. See *Commonwealth* v. *Keefner*, 461 Mass. 507, 517-518 (2012) (no probable cause to search where police

[13]See also *Commonwealth* v. *Rivera*, 44 Mass. App. Ct. 452, 453-454 (1998) (defendant had possession of six vials of cocaine contained in a larger package, had been observed selling marijuana moments before his arrest, and fled upon seeing the police); *Commonwealth* v. *Martin*, 48 Mass. App. Ct. 391, 392 393 (1999) (police observed defendant grab bicycle and speed away at their approach and discard plastic sandwich bag that contained eighteen individually packaged small rocks which officers, with their extensive experience in narcotics trafficking, recognized as crack cocaine, packaged for sale as "dime bags"); *Commonwealth* v. *Ahart*, 63 Mass. App. Ct. 413, 414-416 (2005) (defendant, seventeen year old high school student, carried on his person ten bags of cocaine worth from $200 to $400, razor [use of which, according to expert testimony, enables drug dealers to cut their product], and was caught with drugs at 11:00 A.M., thirty minutes before lunch, "a time when, according to the expert, transactions often occur").

did not observe any illegal or suspicious behavior of defendant indicating intent to distribute marijuana).

d. *Implements associated with distribution.* In some cases, the defendant's possession of small quantities of drugs is determined to be more indicative of an intent to distribute than of mere possession because the defendant is found with or in the vicinity of paraphernalia associated with the distribution of drugs.[14] In the present case, there is no evidence connecting the defendant to any of the items often used by drug dealers to facilitate the packaging and distribution of drugs. Further, in view of the fact that the defendant possessed only three rocks of crack cocaine, weighing a total of approximately .4 grams, the mere fact that the drugs were packaged for street level sale is not probative on the "dealer versus user" question.[15]

---

[14]For example, distinctive packaging and the proximity between the drugs and implements and devices used to measure and package drugs may be critical in determining that evidence is sufficient to conclude that a person's possession was not simply for personal use, but rather with the intent to distribute. See *Commonwealth* v. *Davis*, 376 Mass. 777, 778-779, 788 (1978); *Commonwealth* v. *Monterosso*, 33 Mass. App. Ct. 765, 770-771 (1992). See also *Commonwealth* v. *Ridge*, 37 Mass. App. Ct. 943, 945 (1994) ("[E]vidence that the defendant also possessed . . . drug paraphernalia such as Inositol cutting powder, a digital scale, a box of small baggies and a bag sealer supports [an] inference [of intent to distribute]"); *Commonwealth* v. *Madera*, 76 Mass. App. Ct. 154, 161-162, 164 n.9 (2010) ("Here the officer . . . described . . . the general practices of drug dealers and typical signs or tools of the trade, i.e., quantity of drug, packaging materials, and weighing implements, and the presence of cash, communication devices, and cutting materials"). Cf. *Commonwealth* v. *Westbrooks*, 79 Mass. App. Ct. 417, 418-419 & n.1 (2011) ("The Commonwealth's police witnesses conceded on cross-examination the lack of evidence indicative of drug distribution, such as scales, dilutant, grinders, baggies or packaging materials, ledgers, a safe or other security items, and weapons"; jury found defendant guilty of lesser included offense of simple possession on indictments charging possession with intent to distribute).

[15]See *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 419, 422-424 (1982) (possession of six packets of marijuana totaling 23.44 grams and six packets of cocaine totaling 6.63 grams, without more, did not warrant guilty finding as to intent to distribute); *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997, 998-999 (1982) (possession of eight glassine bags of heroin, two smaller bags containing heroin, and two packets containing cocaine not sufficient evidence, standing alone, to withstand motion for required finding on charge of intent to distribute); *Commonwealth* v. *Andrews*, 49 Mass. App. Ct. 201, 204 (2000) (possession of 2.73 grams of cocaine packaged in eleven envelopes "does not, without more, clearly tend towards showing an intent to distribute"). See also *Commonwealth* v. *Gollman*, 51 Mass. App. Ct. 839, 847 (2001) (pos-

e. *Possession of currency*. The fact that a person found in possession of drugs also has on his person or under his control a "a large amount of cash," *Pena* v. *Commonwealth*, 426 Mass. 1015, 1018 (1998), may suggest his direct involvement in drug distribution.[16] In the present case, the defendant had $312 in cash on his person. Officer Wadlegger did not offer an opinion that the possession of this cash was a factor that suggested the defendant's possession of the drugs was with the intent to distribute. See *Jowers* v. *State*, 593 So.2d 46, 47 (Miss. 1992) ("[N]ot everyone who has $356.00 in cash is a drug dealer . . ."). The cash was not marked as an exhibit. There is no evidence that the cash consisted of denominations of bills corresponding to the proceeds of street level sales. Further, there is no evidence that the defendant was unemployed or had no known source of income. In these circumstances, the cash found on the defendant's person has little, if any, evidentiary value.[17]

f. *The* Gonzales *case*. The principal case on which the majority relies is *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 731 (1992), in which we held that, although the question as to sufficiency of the evidence was "a close one," an inference of

session of 2.71 gram piece of crack cocaine and a pager alone "not a case where the sheer amount of the drugs provided sufficient evidence of intent to distribute"), *S.C.*, 436 Mass. 111, 116-117 (2002) (conviction upheld because "inference from all the circumstances" of intent to distribute was "reasonable and possible, though not inescapable").

[16]See, e.g., *Pena* v. *Commonwealth*, *supra* at 1017, 1018 (police found more than 350 grams of cocaine and $3,295 in cash inside china closet across from where defendant was arrested); *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 147-148 (2008) (large amount of cash found in possession of defendants supported finding that they were involved in drug enterprise); *Commonwealth* v. *Berry*, 63 Mass. App. Ct. 910 (2005) (more than 570 grams of cocaine, "about $1,200 in cash rolled up in two separate bundles," and drug sales paraphernalia found in bedroom supported charge of possession with intent to distribute).

[17]Contrast *Commonwealth* v. *Rivera*, 6 Mass. App. Ct. 947, 947 (1978) (possession by two defendants of drugs and $410 and $152 in cash, respectively, in circumstances in which it was shown that they were unemployed and where police observed one defendant flushing twenty-five to thirty packets of heroin down toilet and found packaging materials and a variety of other paraphernalia used in sales presented jury question of intent to distribute); *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758-759 (1984) ("Very indicative [of intent to distribute] is the large miscellany of cash [$33,020] carried in specie by the defendant, who was otherwise confessedly without any resources and unemployed to boot").

possession with the intent to distribute was possible, with the aid of expert witness testimony, even though the amount of the drugs was small (.32 grams). The differences between the present case and *Gonzales* are significant. There, although the amount of the drugs was small, an expert witness testified that the possession of a "bundle" of ten individually wrapped and distinctively stamped packets of heroin, tied together by an elastic, was consistent with possession with intent to distribute rather than personal use, and the defendant had $167 in "loose currency" despite being unemployed.[18] Here, by contrast, there were only three packets of cocaine. There was also no evidence the defendant was unemployed and thus unlikely to have this amount of cash in his pocket. In sum, there was less evidence in this case than in *Gonzales*, which the court considered to be a "close" case. *Ibid.* There is no appellate authority in this Commonwealth for the view that the possession of a small quantity of drugs and an amount of cash as in this case ($312) without more permits a reasonable inference that the drugs were possessed with the intent to distribute. Contrast *Commonwealth* v. *Rivera*, 425 Mass. 633, 647-649 (1997) (although defendant had only two bags of cocaine weighing respectively .18 and .23 grams and twenty dollars, his conviction of possession with intent to distribute was warranted by evidence that police observed him engage in hand-to-hand sales of drugs from apartment).

*4. Opinion testimony by Officer Wadlegger. a. Lack of adequate foundation.* The opinion testimony of an experienced narcotics investigator may supply additional evidence necessary to enable a fact finder to determine that a defendant's possession of drugs was with the intent to distribute. See, e.g., *Commonwealth* v. *Gollman*, 436 Mass. 111, 115-117 (2002); *Commonwealth* v. *Evans*, 436 Mass. 369, 371-372, 376-377 (2002); *Commonwealth* v. *Hernandez*, 77 Mass. App. Ct. 259, 265 n.9 (2010).

Officer Wadlegger contributed two opinions in his capacity as an expert witness in this case. First, he opined that the size and packaging of the drugs was "consistent with street level sale." "This much-used word has certain chameleon-like qualities. Many activities may be 'consistent' with a certain state of af-

---

[18]There is no evidence that the defendant in the present case was unemployed or that there was a nexus between the drugs he possessed and the money.

fairs, but equally, if not more, consistent with completely different ones. The probative effect of 'consistent' evidence depends upon the extent to which the consistency is exclusive of other explanations, and elicited testimony using the word should make this clear." *Parker* v. *United States*, 601 A.2d 45, 52 n.23 (D.C. 1991).

The present case illustrates the weakness of relying predominantly on expert witness opinion that certain facts are "consistent with" intent to distribute, because, here, without added information that the defendant was actually loitering in a high crime area and doing something in some way associated with the sale of drugs, the inference that the defendant was a seller as opposed to a recent buyer — that is, that any "street level sale" was by the defendant rather than to the defendant — is a matter of speculation. See *Commonwealth* v. *Murphy*, 34 Mass. App. Ct. 16, 18-19 (1993).

Officer Wadlegger's second opinion was that the defendant was more likely a seller rather than a user because he did not have a pipe in his possession. While this adds something to the equation, see *Commonwealth* v. *Wilson*, 441 Mass. 390, 401-402 (2004); *Commonwealth* v. *Little*, 453 Mass. 766, 770, 792 (2009), to infer intent to distribute on the basis of this opinion, even in combination with the first opinion, would also be based on speculation given the absence of other indicia of an intent to distribute[19] and the fact that Officer Wadlegger conceded that he had arrested and charged other persons with mere possession of crack cocaine even though they were not in possession of implements for smoking the cocaine, that other common items such as soda cans can be used to smoke crack cocaine, and that crack cocaine can be mixed with marijuana and smoked in the form of a cigarette. See *Sevigny's Case*, 337 Mass. 747, 751 (1958) ("an opinion given by an expert will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached"). In sum, even though this opinion provides evidence that, when stopped, users of cocaine "usually have

---

[19]The defendants in *Commonwealth* v. *Wilson*, *supra* at 400-401, and *Commonwealth* v. *Little*, *supra* at 770-771, had, respectively, twenty and fifteen individually packaged bags of marijuana in their possession.

something on their person . . . to ingest [the] drug," it also states that that is not always the case; thus, it is not sufficient to provide proof beyond a reasonable doubt of the element of intent to distribute.

b. *Inadmissible hearsay basis for expert opinion.* The trial judge sustained seven hearsay-based objections by defense counsel over the course of Officer Wadlegger's brief testimony. On cross-examination, this telling exchange occurred:

> *Q.:* "And there is nothing about the fact that it's three rocks that suggests to you that he's a dealer?"
>
> *A.:* "The manner in which it was packaged, our information about [the defendant], the area, the observations beforehand, and the way it's packaged, and the amount."
>
> *Q.:* "Let me ask you this: Did you personally see [the defendant] engage in narcotics transactions on September 30, 2009?"
>
> *A.:* "I did not, no."
>
> *Q.:* "And so you're relying predominantly on information that was provided by outside sources?"
>
> *A.:* "Yes. From a reliable informant, correct."
>
> *Q.:* "And the informant's name?"
>
> *A.:* "I don't have that. It wasn't my informant."

Although defense counsel did not move to strike the remainder of Officer Wadlegger's opinion testimony, this testimony casts a pall over his other opinion testimony. This case falls into that narrow and exceptional class of cases in which the failure to object to evidence at trial must be noticed for the first time by an appellate court because the record on appeal demonstrates that the error was plain and trial counsel's failure to object created a substantial risk of a miscarriage of justice. See *Massaro v. United States,* 538 U.S. 500, 508 (2003) ("There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*"); *Commonwealth*

v. *Zinser,* 446 Mass. 807, 811 n.4 (2006). See also *Commonwealth* v. *Frisino,* 21 Mass. App. Ct. 551, 553-554 (1986); *Commonwealth* v. *Lester,* 70 Mass. App. Ct. 55, 63-66 (2007).

The principal problem with Officer Wadlegger's opinion testimony is that, as he testified on cross-examination, it was based predominantly on inadmissible hearsay, and it thus violated the defendant's right to confrontation insofar as it channeled information from an informant who was not a witness at trial or even identified, and whose reliability was unknown. See *Bullcoming* v. *New Mexico,* 131 S. Ct. 2705, 2713, 2716 (2011). See also *Williams* v. *Illinois,* 132 S. Ct. 2221 (2012) (plurality opinion). Without it, any inference that the defendant's possession of the drugs was with the intent to distribute would be based only on speculation. See *Commonwealth* v. *McGovern,* 397 Mass. 863, 867-868 (1986) ("findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice").[20]

5. *Application of the* Jackson-Latimore *standard.* a. *Deference to rational fact finder.* In *Commonwealth* v. *Latimore,* 378 Mass. at 374, citing *Jackson* v. *Virginia,* 443 U.S. at 318-319, the Supreme Judicial Court adopted the governing Federal due process standard for assessing the sufficiency of the evidence in a criminal case. This test has multiple parts. Sufficiency of the evidence challenges in most cases are resolved on the basis of the first part of the *Jackson-Latimore* standard, which is relied upon by the majority. We defer to the jury or judicial fact finder's judgment about the sufficiency of the evidence when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis original). *Jackson* v. *Virginia,* 443 U.S. at 319. This case, how-

---

[20]The fact that defense counsel's overall performance is exemplary does not alter the fact that "a mistake as serious in its likely effect as this amounts to ineffective assistance of counsel, whether it is regarded as simple oversight or as a tactical judgment that was 'manifestly unreasonable.' " *Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257, 260 (1985), quoting from *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). It is worth remembering also that "the issue in ineffectiveness cases is not a lawyer's culpability, but rather his client's constitutional rights. . . . Even the best attorney may render ineffective assistance, often for reasons totally extraneous to his or her ability." *United States* v. *DeCoster,* 487 F.2d 1197, 1202 n.21 (D.C.Cir. 1973).

ever, is not one in which the evidence was sufficient for a rational trier of fact to infer an intent to distribute beyond a reasonable doubt.[21]

b. *Conclusions based on conjecture insufficient to support conviction.* The second part of the *Jackson-Latimore* standard is reserved for cases such as this where proof of an essential element such as intent has been deemed sufficient by the fact finder on the basis of a conjecture, as opposed to a reasonable inference, from the evidence. "[I]t is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Latimore,* 378 Mass. at 677-678.

It is possible that the defendant in this case had possession of crack cocaine with the intent to distribute it. One could speculate that the defendant had sold ten to fifteen twists of crack cocaine for twenty dollars apiece before the police arrived and arrested him, which might account for much of the cash in his pocket. One could speculate that the absence of a pipe with which to smoke crack cocaine means that the three twists of crack cocaine in the defendant's possession were being held with the intent to distribute. One could speculate that the defendant was standing in an area known for drug sales with a group of individuals, one of whom was a drug dealer, before they entered the Daily Mart store because he too was a drug dealer. However, our duty as an appellate court requires us "to take a hard look at the record and to reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative. . . . This function is especially important in criminal cases, given the prosecution's obligation to prove every element of an offense beyond a reasonable doubt." *United States* v. *Spinney,* 65 F.3d 231, 234 (1st Cir. 1995). Accord *Commonwealth* v. *Montalvo,* 76 Mass. App. Ct. 319, 329-330 (2010). An inference here that the defendant had the intent to distribute "may be

---

[21]For a similar case, see *State* v. *Wilkins,* 703 S.E.2d 807, 808, 810-811 (N.C.App. 2010) (evidence that defendant possessed three small bags of marijuana with a total weight of 1.89 grams, and $1,264 in cash insufficient to support inference of intent to distribute).

plausible, but cannot bear the weight of proof beyond a reasonable doubt." *Commonwealth* v. *Rodriguez,* 456 Mass. 578, 582 (2010).

c. *The evidence of intent to distribute is insufficient to satisfy the* Jackson-Latimore *standard because it tends equally to sustain two inconsistent propositions.* The principle that in certain situations the fact finder can permissibly draw either of two conflicting, but nonetheless reasonable and possible, inferences, is illustrated by the facts in *Commonwealth* v. *Hernandez,* 77 Mass. App. Ct. 259, 260-261, 264-266 (2010). There, the police observed a van parked with its engine running and lights on. The passenger side door was open and a man was observed bending over behind a dumpster. The man then entered the van, and it drove away. The police followed the van and pulled it over after a traffic violation. *Id.* at 260-261. The experienced narcotics officers suspected that drugs had been either dropped off or picked up. *Ibid.* The defendant was pat frisked. The police found a cellular telephone in his right pants pocket and, in the pocket of a pair of athletic style shorts underneath his pants, a clear plastic bag filled with 13.98 grams of powder cocaine. *Id.* at 261, 262. During booking, the detectives also removed $56 in cash. *Id.* at 261. A police witness acknowledged that the defendant's activity at the dumpster, combined with the discovery of cocaine in his inner pocket, "would suggest that the defendant was a buyer, but he further opined, without objection, that the quantity of cocaine in the defendant's pocket, the cellular telephone, and the fifty-six dollars found during the patfrisk were consistent with possession with intent to distribute." *Id.* at 262. According to the police officer's testimony, "street sales typically involve amounts of cocaine up to one gram; the defendant had 13.98 grams, almost one half ounce of cocaine." *Ibid.* Despite the absence of paraphernalia indicative of drug dealing or items indicative of personal consumption, the critical additional evidence was supplied by another police witness.

> "Testifying as an expert, he identified the North Common Street area where the defendant was first seen behind the dumpster as a high drug crime area. He described typical street level cocaine transactions in Lynn as involving one gram, one-half gram, or one-quarter gram bags, called

'twists,' being sold for twenty to forty dollars. He also testified that larger quantities of cocaine, such as five to six grams, are amounts more typical of purchases by a 'mid level dealer,' and can be broken down into smaller twists for sale to individual users. He expressed the opinion that a one-half ounce of cocaine is 'not usually for personal use' because '[i]t's a lot of cocaine to have on hand' for one user, saying that the common practice of street-level users is to buy one or two small twists at a time because they do not have the money to buy larger quantities. He conceded that some people do acquire larger amounts for personal use, but in his experience on the streets of Lynn, one-half ounce of cocaine is 'an awful lot of cocaine' for that purpose. He estimated that the amount of cocaine found on the defendant would sell for about $600 as a single package, but could be divided into fifty-six separate one-quarter gram twists, sold on the street at twenty dollars each."

*Id.* at 262.[22]

In *Hernandez, supra* at 264-265, we explained that the familiar and often cited axiom from *Commonwealth* v. *Croft*, 345 Mass. 143, 145, (1962), quoting from *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940) ("When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof"), was not applicable: "This case does not involve such a small amount of drugs; the drug expert opined that a typical package sold on the street is one-quarter of one gram. Here, the defendant was in possession of a bag containing 13.98 grams, which, as the expert permissibly stated, can be broken down into fifty-six one-quarter gram street bags." *Id.* at 265. In other words, in *Hernandez*, based on the quantity of the cocaine and the police officer's expert testimony concerning typical street level transactions and the significance of this amount, the inference from the

---

[22]In *Hernandez, supra* at 260-262, unlike the present case, the police observed the defendant for a more significant period of time and the observations of the defendant by the dumpster and then entering the passenger side of the waiting van supplied context for the expert witness's opinion about the significance of the amount of cocaine and its street value. In the present case, on the other hand, we have only a snapshot in time of a young man standing on the street.

evidence that the defendant possessed the cocaine for personal use was not as likely as the inference that he possessed it with the intent to distribute it, and therefore the fact finder had a rational basis for choosing to draw the latter inference instead of the former inference. See *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992), quoting from *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981) ("To the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies' "); *Commonwealth* v. *Gollman*, 436 Mass. at 116-117. Here, on the other hand, considering the totality of the evidence, even if the two opinions contributed by Officer Wadlegger (the significance of the size and packaging of the three rocks of crack cocaine and the absence of a pipe) are given evidentiary weight, the inference of possession with intent to distribute and the inference of possession for personal use are inconsistent and equally plausible.[23] See *Commonwealth* v. *Croft*, 345 Mass. at 145; *Commonwealth* v. *Dostie*, 425 Mass. 372, 376 (1997) ("[A] jury may not use conjecture or guesswork to choose between alternative inferences"; rather, "each inference must be a reasonable and logical conclusion from the prior inference"); *Commonwealth* v. *Rodriguez*, 456 Mass. at 583 ("inference . . . may be plausible, but cannot bear the weight of proof beyond a reasonable doubt" where inconsistent conclusion "equally inferable"). And, without Officer Wadlegger's opinions, the speculative leap required to reach the conclusion that the defendant's possession was with the intent to distribute would be even greater.

The question in this case is not the plausibility or implausibility of any hypothetical theory of innocence, but simply whether the evidence the Commonwealth presented was constitutionally sufficient to permit a rational finding beyond a reasonable doubt that the defendant possessed the three rocks of crack cocaine with the intent to distribute. The stubborn facts and the reasonable inferences that may be drawn from them in this case are inadequate as an evidentiary foundation to support a conclusion

---

[23]As noted in *State* v. *Elzie*, 343 So.2d 712, 716 (La. 1977), "[m]ere possession is not 'some evidence' of possession with intent to distribute." The court in *State* v. *Elzie*, *supra*, also observed that in order to meet its burden of proving intent to distribute, the State must affirmatively show that the amount or circumstances of the possession are inconsistent with personal use.

beyond a reasonable doubt of intent to distribute. See *Commonwealth* v. *Rodriguez*, 456 Mass. at 583.

For the above reasons, the defendant's conviction should be reversed and the case should be remanded to the Superior Court for entry of a finding of guilty on so much of the indictment as charges unlawful possession of cocaine and resentencing. See *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 540 (1990).