## COMMONWEALTH VS. FREDERICK J. BUSH.

No. 06-P-323.

Plymouth. September 20, 2007. - January 29, 2008.

Present: BERRY, GREEN, & VUONO, JJ.

*Controlled Substances. Search and Seizure,* Forcible entry by police.

On the record of a hearing on a pretrial motion to suppress evidence in a criminal case, this court discerned no clear error in the motion judge's findings that a police detective knocked on the defendant's apartment door, announcing his presence and intention to execute a search warrant, and that five seconds elapsed between the announcement and the detective's attempt to break down the door [133-134]; further, where the detective's decision to use force to enter the defendant's apartment within five seconds was reasonable, given the darkened hallway, the "scurrying" sounds and the lack of a verbal response from within the apartment, and the police officers' awareness that there might be a firearm in the apartment, the trial court judge did not err in denying the defendant's motion to suppress [134-135].

At a criminal trial, the judge properly denied the defendant's motion for a required finding of not guilty on a charge of possession of cocaine with intent to distribute, where, although the quantity of cocaine seized from the defendant's apartment was not large, the Commonwealth presented other ample evidence from which the jury could have inferred an intent to distribute. [136-137]

INDICTMENTS found and returned in the Superior Court Department on February 15, 2002.

A pretrial motion to suppress evidence was heard by *Carol S. Ball,* J., and the cases were tried before *Margaret R. Hinkle,* J.

*Michele R. Moretti* for the defendant.

*Kristen A. Stone,* Assistant District Attorney, for the Commonwealth.

VUONO, J. This appeal presents the issue whether a five-second delay between the time the police knocked on the defendant's door, announcing their presence and intention to execute a search warrant, and their forced entry into the apartment was reason-

able. Based on circumstances indicating a threat to the safety of the police officers, a Superior Court judge ruled that a five-second interval satisfied the knock and announce requirement. Consequently, the judge denied the defendant's motion to suppress "crack" cocaine and weapons, including a three and one-half foot sword, knives, homemade nunchucks, and mace, seized during the search. A jury then convicted the defendant of possession of cocaine with intent to distribute, a related school zone violation, assault and battery with a dangerous weapon, resisting arrest, and illegal possession of a dangerous weapon.[1] On appeal, he claims error in the denial of his motion to suppress and motions for required findings of not guilty.[2] We affirm.

1. *Motion to suppress.* The hearing on the defendant's motion to suppress centered on whether the police knocked prior to entering, and whether the concededly brief amount of time — five seconds — between the police officer's knock and announcement and the forced entry was sufficient to permit the defendant to comply with the law and open the door. The motion judge heard testimony from Detective Thomas Keating of the Brockton police department, the lead investigating officer, and from Lieutenant Emmanuel Gomes, Keating's supervising officer. We summarize the facts found by the motion judge, supplemented by uncontroverted testimony from the suppression hearing. *Commonwealth* v. *Washington*, 449 Mass. 476, 477 (2007).

---

[1]The trial judge allowed the defendant's motion for a required finding of not guilty on another charge, armed assault with intent to murder. That charge stemmed from the same acts that provided the basis for the convictions on the assault and battery by means of a dangerous weapon indictments. One count of assault and battery by means of a dangerous weapon was dismissed at the Commonwealth's request prior to trial.

[2]In his brief submitted pursuant to *Commonwealth* v. *Moffett*, 383 Mass. 201 (1981), the defendant further claims that (1) the affidavit submitted in support of the search warrant failed to establish probable cause; (2) he was denied the opportunity to confront a confidential informant; and (3) he received ineffective assistance of counsel. Since these issues are raised for the first time on appeal, our review is limited to determining whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 294-295 (2002). After examining the record, we find no error as to the issues raised in the defendant's *Moffett* brief.

a. *Facts.* Following a two-week undercover narcotics investigation, Detective Keating sought a search warrant for the defendant's residence, a second-floor apartment in a three-story, three-family building located at Six Carleton Street in Brockton. Although Detective Keating testified that he had learned during the course of the investigation that there might be guns in the apartment, he was unable to corroborate this information and did not request a no-knock warrant.

The warrant was issued on December 7, 2001, and executed at 8:45 P.M. the same day by Detective Keating, Lieutenant Gomes, and approximately ten additional members of the Brockton police department and the Massachusetts State police. All of the officers were wearing jackets or protective vests that identified them as police officers.

Detective Keating was in the lead of a group of six or seven officers who entered through the front door, while others covered the rear exit. He was carrying a forty-pound metal battering ram. The stairs up to the second floor made several turns, described by Lieutenant Gomes as a "zigzag," before arriving at a small landing where there was only room for one person to stand. The hallway was dark. While the other officers were climbing the stairs leading to the second floor, Detective Keating approached the apartment door. He knocked and yelled, "Brockton Police, search warrant." He heard movement inside the apartment, but there was no verbal response and no answer at the door.

Detective Keating then started hitting the door with the battering ram. He continued to yell, "Brockton Police, search warrant" as he struck the door. Detective Keating immediately realized that the door was barricaded; ordinarily, one blow to the lock would have been sufficient to open the door.[3] Lieutenant Gomes, who was five or six steps down the stairway behind Detective Keating, and the other officers, were also all yelling, "Brockton Police, search warrant," from the time they began running up the stairs until the door broke.

Based on this evidence, the motion judge found that Detective Keating knocked and announced his presence and purpose,

---

[3]Later examination showed that the door was barricaded with a "two by four" board.

waited five seconds, and then began to strike the door. Noting that Detective Keating had testified that he waited approximately twenty seconds before he used the battering ram, the motion judge remarked that in the heat of the moment, hearing the "scuffling" noises inside, he might have overestimated the time he waited. The motion judge's conclusion that Detective Keating waited five seconds prior to attempting to force down the door was based on Lieutenant Gomes's testimony that he was "six steps behind, a few seconds behind" Detective Keating, and that the battering began after Gomes arrived at the landing outside the door.[4] The judge also found that Detective Keating heard movement within the apartment and noted that "if he heard scurrying, then surely he could have heard if someone said, 'Who's there?' " She further determined that the battering at the door went on for several additional seconds before the door finally gave way, during which time Detective Keating and others continued to yell, "Brockton Police, search warrant," and that no one within the apartment responded to the police during that time. The judge explicitly found that there was a concern for the officers' safety because weapons might have been involved, even though the police did not have probable cause for a no-knock warrant. The danger, according to the motion judge, only increased once the police determined that the door had been barricaded.

b. *Discussion.* In reviewing a ruling on a motion to suppress evidence, we accept the motion "judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Washington*, 449 Mass. at 480.

The defendant claims that the judge erred in finding that Detective Keating knocked and then waited five seconds before making a forced entry, because the officers' testimony differed as to the amount of time Detective Keating waited before he began hammering the door.[5] We defer to the motion judge, who had an opportunity to observe the witnesses, in matters of

[4]The judge stated: "And it seems to me about five seconds is about logical based on the evidence that [Lieutenant Gomes] said that he was six — six steps behind, a few seconds behind [Detective Keating]."

[5]The defendant urges us to reverse the order denying his motion to suppress

credibility. See *Commonwealth* v. *Colon*, 449 Mass. 207, 215-216, cert. denied, 128 S. Ct. 810 (2007). On this record,[6] we discern no clear error in the motion judge's finding that Detective Keating knocked and that five seconds elapsed between the announcement and the attempt to break down the door.

We next turn to the question whether the decision to use force after hearing no response within five seconds was reasonable. No "bright-line" rule marks the length of time that must elapse after a knock and announcement before police may proceed with a forced entry.[7] *United States* v. *Sargent*, 319 F.3d 4, 11 (1st Cir.), cert. denied, 540 U.S. 1073 (2003). See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 237 (2002) (Sosman, J., dissenting) (noting Supreme Judicial Court has not addressed issue of how much time must elapse and indicating courts are reluctant to set bright-line time requirements). As the United States Supreme Court has recently noted, "When the knock-and-announce rule does apply, it is not easy to determine precisely what officers must do. How many seconds' wait are too few?" *Hudson* v. *Michigan*, 547 U.S. 586, 590 (2006).

An interval spanning only seconds may be sufficient depend-

on the basis that Lieutenant Gomes's trial testimony differed from the testimony he provided at the suppression hearing. We do not consider evidence presented at trial in reviewing a judge's decision on a motion to suppress decided before trial. See *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 126, 132 (1981). In any event, contrary to the defendant's contention, Lieutenant Gomes's trial testimony did not contradict his earlier testimony or the motion judge's findings.

[6]After the testimony on the motion to suppress concluded, the defendant brought to the motion judge's attention an excerpt from a transcript of testimony by Lieutenant Gomes at a prior hearing concerning the defendant's dangerousness. The defendant asserted that the excerpt contradicted Gomes' testimony that the knock and announce preceded the attempt to break down the door. The motion judge reviewed the excerpt but refused to admit it or reopen the hearing. There was no error. As the motion judge found, the brief testimony was not necessarily inconsistent and was given in the context of a hearing that focused on the defendant's dangerousness, not the propriety of the knock and announce. She then specifically reiterated her finding that Gomes' testimony before her was credible.

[7]The defendant's reliance on *Commonwealth* v. *Gomes*, 408 Mass. 43, 46 (1990), for his position that the entry was unlawful, is misplaced. *Gomes* concerns a forcible entry by the police without any prior announcement pursuant to a no-knock warrant. This is not a no-knock case. As noted *supra*, there was a five-second delay between the knock and announcement and the forcible entry.

ing on the particular facts presented to the officers executing the warrant. Indeed, a five-second interval has been reasonable in some circumstances. See *United States* v. *Sargent, supra* at 11-12 (five-second interval was reasonable where police knew there were knives and possibly a firearm in a small apartment and received no answer to their knock). Cf. *Commonwealth* v. *Macias*, 429 Mass. 698, 703 (1999) (adherence to knock and announce rule adds only "extra few seconds" to execution of warrant); *Commonwealth* v. *Herring*, 66 Mass. App. Ct. 360, 361-363 (2006) (involving a five- to ten-second delay between knock and announcement and battering of door in area known for drug trafficking; useless gesture exception applied).

The reasonableness of the delay is evaluated based on the perspective of a reasonable officer at the scene. *United States* v. *Banks*, 540 U.S. 31, 39 (2003). "[F]acts known to the police are what count in judging reasonable waiting time." *Ibid.* See *Commonwealth* v. *Jimenez*, 438 Mass. at 237 (Sosman, J., dissenting). Here, given the darkened hallway, the "scurrying" sounds without a verbal response, and the officers' awareness that there might be a firearm in the apartment, it was reasonable for the police to fear a threat to their safety within five seconds.[8]

Moreover, as the motion judge noted, the occupants of the apartment had plenty of time to respond to the continued announcing while Detective Keating was ramming the door, and could have stopped the forcible entry had they done so.[9] Thus, the judge did not err in denying the defendant's motion to suppress.

---

[8]Although the point was not addressed by the motion judge, we note that evidence presented at the suppression motion established that controlled purchases of narcotics had been made in the defendant's apartment. While not conclusive, the fact that the crime involves drug distribution may reduce the length of the delay between announcement and forced entry that is considered reasonable. See *United States* v. *Banks*, 540 U.S. at 39-41 (holding that proper time is not how long it would take the occupant to reach the door, but how long it would take to dispose of the suspected drugs, and determining that fifteen to twenty seconds was not an "unrealistic" time to dispose of cocaine). See also Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 9-2(b) (2006-2007 ed.).

[9]That the danger increased once the police determined the door was barricaded plays no role in the reasonableness of the officer's determination to begin ramming the door after five seconds.

2. *Sufficiency of the evidence.* The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and renewed his motion after all the evidence was closed. Thus, we review his claim of insufficient evidence under the familiar *Latimore* standard, and then determine whether the defendant's evidence caused the Commonwealth's case to deteriorate. *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). *Commonwealth* v. *O'Laughlin,* 446 Mass. 188, 203 (2006).

*Intent to distribute.* The defendant argues that the Commonwealth's evidence was not sufficient to prove an intent to distribute. The police seized 2.04 grams of crack cocaine from a clipboard at the foot of the defendant's bed, a plate containing cocaine residue and a razor blade on the floor under the bed, and .37 grams of crack cocaine in a bag under the bureau. Relying on the testimony of the Commonwealth's expert, Detective Kevin O'Connell, who acknowledged that 2.4 grams of crack cocaine could be consistent with personal use, and the absence of items typically associated with distribution, such as scales, cutting agents, packaging materials, and large amounts of cash, the defendant claims the Commonwealth failed to meet its burden.

Although the quantity of cocaine was not large, the Commonwealth presented ample evidence from which the jury could have inferred an intent to distribute.[10] The police did not find any crack pipes or other instruments for smoking crack cocaine anywhere in the apartment. Detective O'Connell, a highly experienced narcotics officer, explained that crack cocaine is consumed by smoking, and that the absence of a "crack pipe" or other smoking paraphernalia is an indication of distribution. See *Commonwealth* v. *Wilson,* 441 Mass. 390, 401 (2004) (absence of smoking paraphernalia consistent with distribution).

[10]Bush's reliance on *Commonwealth* v. *Wooden,* 13 Mass. App. Ct. 417, 422-424 (1982), and *Commonwealth* v. *Tripp,* 14 Mass. App. Ct. 997, 998-999 (1982), to support his position that the quantity of drugs found is insufficient to prove distribution is misplaced. Neither case controls the result here because, unlike the situation in *Wooden* and *Tripp,* the Commonwealth presented other evidence of distribution for the jury to consider. See, e.g., *Commonwealth* v. *LaPerle,* 19 Mass. App. Ct. 424, 428-429 (1985) (cocaine residue alone can be sufficient where there are other indicia of distribution).

Detective O'Connell further explained that 2.4 grams of crack cocaine was an amount generally held by small drug dealers, and was an unusually high amount for personal use.

In addition, Detective Keating testified about his surveillance of Bush's apartment building, and the high level of vehicular and pedestrian traffic he observed. On some nights, eight or more people per hour entered the three-family building and left after remaining inside for less than five minutes. According to Detective O'Connell, this type of activity is indicative of drug distribution. Finally, Detective O'Connell testified that apartments from which drugs were distributed in Brockton normally had barricaded doors.

Considering the case again at the close of all the evidence does not lead to a different conclusion. The Commonwealth's case did not deteriorate after the defendant testified, as the jury were entitled to discredit his testimony. See *Commonwealth* v. *Platt*, 440 Mass. 396, 404 (2003) (Commonwealth's case does not deteriorate where defendant's trial evidence turns solely on witness credibility, as it is jury's function to evaluate credibility).

If anything, the evidence against the defendant may have been strengthened by his testimony that he intended to use some of the cocaine with Brian Gibbons, another person arrested in the apartment, and that he had given some of the cocaine to another friend, Alycka Wagner, to sprinkle on her marijuana cigarette.[11] See *Commonwealth* v. *Velasquez*, 57 Mass. App. Ct. 922, 923 (2003) (distribution does not require intention to sell; can be established by intent to give away controlled substance).

The judge correctly denied Bush's motion for a required finding of not guilty.

*Judgments affirmed.*

---

[11]During the search, the police found Wagner hiding in the closet of the defendant's bedroom.