COMMONWEALTH *vs.* CARL SEPHEUS.

Hampden. January 7, 2014. - May 19, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Controlled Substances. Practice, Criminal,* Assistance of counsel, Confrontation of witnesses, Required finding. *Constitutional Law,* Assistance of counsel, Confrontation of witnesses. *Due Process of Law,* Assistance of counsel. *Evidence,* Expert opinion, Intent. *Witness,* Expert. *Intent. Drug Paraphernalia.*

At the trial of an indictment charging possession of cocaine with intent to distribute, the evidence was sufficient to sustain the defendant's conviction, where, even though the Commonwealth's proof otherwise depended entirely on a weak inference that buyers of "crack" cocaine generally have a smoking device on their persons whereas sellers do not, the improper, unobjected to opinion testimony that the defendant was a drug dealer provided the evidentiary basis for the proper denial of the defendant's motion for a required finding. [163-169]

At a criminal trial, the defendant's confrontation right under the Sixth Amendment to the United States Constitution was not implicated by the testimony of the Commonwealth's expert witness based in part on inadmissible hearsay provided by a reliable informant, where the evidence was not admitted for the truth of the matter, and where the expert's opinion was not hearsay, in that he testified at trial and was thus subject to cross-examination. [170-171]

At a criminal trial, counsel provided constitutionally ineffective assistance where there was no strategic reason to ask the Commonwealth's expert witness, on cross-examination, for his opinion of the defendant's guilt, and where counsel did not move to strike the expert's nonresponsive opinion testimony that the defendant was a drug dealer, given that the opinion provided the proof the Commonwealth needed to survive the defendant's motion for a required finding. [171-172]

INDICTMENT found and returned in the Superior Court Department on November 18, 2009.

The case was heard by *C. Brian McDonald,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Leslie H. Powers* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant was convicted at a jury-waived trial of possession of cocaine with intent to distribute. G. L. c. 94C, § 32A (*c*). A divided panel of the Appeals Court affirmed the conviction. See *Commonwealth* v. *Sepheus*, 82 Mass. App. Ct. 765 (2012). We granted the defendant's application for further appellate review. On appeal the defendant argues that (1) his motion for a required finding of not guilty should have been allowed as to the element of intent to distribute, (2) his right of confrontation under the Sixth Amendment to the United States Constitution was violated by the admission of hearsay evidence during cross-examination of the Commonwealth's expert witness, and (3) counsel was ineffective for failing to move to strike a portion of the testimony of the Commonwealth's expert witness. We conclude that the evidence was sufficient to warrant conviction of possession of cocaine with intent to distribute. We also conclude that there was no Sixth Amendment violation. However, we conclude that trial counsel was ineffective for failing to move to strike a portion of the testimony of the Commonwealth's expert witness because it was nonresponsive. Had counsel so moved, the testimony should have been stricken and the motion for a required finding of not guilty should have been allowed as to so much of the indictment that alleges intent to distribute. The conviction must be reversed, but the defendant is entitled to a new trial because the Commonwealth may present the testimony of a witness whose statements were allegedly relied on by the Commonwealth's expert.

1. *Facts.* We summarize the evidence adduced in the Commonwealth's case-in-chief. On September 30, 2009, members of the Springfield police department went to the area of Bristol Street and Wilbraham Road in Springfield at approximately 5 P.M. Their purpose was to arrest the defendant on outstanding warrants, and they had information that he would be at that location. The officers drove around the neighborhood trying to identify the defendant from a photograph they were given.

Officer William Lopes and another officer, who were in an unmarked car, broadened their search to include the area where Alden Street intersects Wilbraham Road. They saw the defendant at a convenience store. The neighborhood was a high crime area where numerous arrests for narcotics offenses and crimes

of violence had been made. Officer Lopes used his radio to inform other officers engaged in the search that they had located the defendant.

The defendant was in the company of three to five other males. The group was standing near some gasoline pumps at the store. One person in the group, Dwayne Griffith, walked over to a motor vehicle and made what the officers believed was a narcotics transaction with someone inside the vehicle. He returned to where the others had been standing. The group then entered the store. The time between the point officers first saw the defendant and the point the group entered the store was no more than two minutes. No other narcotics transaction was observed.

Police entered the store and arrested the defendant on the outstanding warrants. Griffith also was arrested. The record is silent as to the offense for which Griffith was arrested. No other person in the group was arrested. The defendant was searched. He had on his person three rocks of "crack" cocaine having a combined weight of approximately 0.4 grams, and $312 in unspecified currency bills. He had no device for smoking crack cocaine.

Detective John Wadlegger, a fifteen-year veteran of the Springfield police department with significant experience in its narcotics bureau, was one of the officers who had been involved in the search for the defendant. He was one of at least seven to ten officers who converged on the store. Over objection and a motion to strike, Detective Wadlegger provided greater detail than Officer Lopes about the reasons police had been dispatched to look for the defendant. He said that they had information that the defendant was in the general area, that he was in possession of a firearm, and that he was selling crack cocaine. That testimony was admitted for the limited purpose of explaining why Wadlegger was in the area.

Detective Wadlegger offered expert testimony that the packaging of the three rocks of crack cocaine seized from the defendant, each of which was inside a twisted-off corner of a plastic sandwich bag, was consistent with a street-level sale of crack cocaine. He estimated that each rock had a street value of approximately twenty dollars. He further testified that in his experi-

ence a user of cocaine, crack cocaine, or heroin usually carries some device to ingest the substance.

On cross-examination Wadlegger conceded that he had arrested people for simple possession of cocaine who had three or more rocks of crack cocaine on their person. He also testified that the three rocks of crack cocaine found on the defendant could be consumed by an average user in about one to two hours. The following exchange then took place:

> *Q.*: "And there is nothing about the fact that it's three rocks that suggests to you that he's a dealer."

> *A.*: "The manner in which it was packaged, our information about Mr. Sepheus, the area, the observations beforehand, and the way it's packaged, and the amount."

Although the answer was not responsive to the question, trial counsel, who is not appellate counsel, did not move to strike the answer. The exchange continued:

> *Q.*: "Let me ask you this: Did you personally see Mr. Sepheus engage in narcotics transactions on September 30th of 2009?"

> *A.*: "I did not, no."

> *Q.*: "And so you're relying predominantly on information that was provided by outside sources."

> *A.*: "Yes. From a reliable informant, correct."

> *Q.*: "And the informant's name?"

> *A.*: "I don't have that. It wasn't my informant."

2. *Motion for required finding of not guilty.* When reviewing the denial of a motion for a required finding of not guilty, we inquire "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443

U.S. 307, 318-319 (1979). Our consideration "is to be measured upon that which was admitted in evidence without regard to the propriety of the admission." *Commonwealth* v. *Farnsworth*, 76 Mass. App. Ct. 87, 98 (2010). The focus of the defendant's argument is the element of intent to distribute. He does not dispute that he was in possession of cocaine. A "defendant's intent to distribute a controlled substance 'is a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had . . . by inference from all the facts and circumstances developed at the trial.' " *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997), quoting *Commonwealth* v. *Ellis*, 356 Mass. 574, 578-579 (1970). The inferences relied upon need not be "inescapable or necessary," *Commonwealth* v. *Cullen*, 395 Mass. 225, 230 (1985); they need only be "reasonable and possible." *Commonwealth* v. *Marquetty*, 416 Mass. 445, 452 (1993) (citations omitted).

The Commonwealth argues that the manner in which the cocaine was packaged, the amount of money found on the person of the defendant, evidence that he was loitering in a high crime area, the sale of narcotics by Griffith, the absence of a smoking device on the defendant's person, and Detective Wadlegger's opinion testimony, taken together, provide sufficient evidence to warrant a finding of intent to distribute cocaine beyond a reasonable doubt. The defendant acknowledges that the factors cited by the Commonwealth are among those properly considered when determining whether a person had the intent to distribute a controlled substance. See *Commonwealth* v. *Roman*, 414 Mass. 642, 645-647 (1993); *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 327 (2010). But when those factors are applied to the evidence in this case and the evidence is viewed in the light most favorable to the Commonwealth, he contends, a rational trier of fact could not have determined beyond a reasonable doubt that the defendant intended to distribute the cocaine found on his person. "Each instance of a prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984).

We turn first to the amount of cocaine. A large amount of cocaine alone can support an inference of an intent to distribute.

See *Commonwealth* v. *Ridge*, 37 Mass. App. Ct. 943, 945 (1994) (636.8 grams of cocaine alone is sufficient to warrant inference beyond reasonable doubt that defendant intended to distribute cocaine). The amount in this case, 0.4 grams, is well below an amount that, standing alone, has been considered insufficient to warrant an inference of intent to distribute. See, e.g., *Commonwealth* v. *Acosta*, 81 Mass. App. Ct. 836, 840-841 (2012) (3.16 grams of cocaine); *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 422-423 (1982) (6.63 grams of cocaine). Indeed, Detective Wadlegger's testimony on cross-examination suggests that 0.4 grams would not be inconsistent with personal use. We are mindful that although the amount found on the defendant was small, it may represent a depleted inventory resulting from sales. See *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 731 (1992). The Commonwealth has not shown that to be the case, but it may resort to other evidence to support an inference of an intent to distribute. See *Commonwealth* v. *Roman, supra*; *Commonwealth* v. *Montalvo, supra.*

The Commonwealth relies on the manner in which the cocaine was packaged for such support. Packaging indeed may provide such support, but like amount, a few individually packaged rocks of crack cocaine do not suffice. See *Commonwealth* v. *Acosta, supra* (five twist bags); *Commonwealth* v. *Wooden, supra* (six packets). There was no evidence that the three baggies in this case had been bundled or packaged in a manner that suggests they were the remains of a larger inventory. Contrast *Commonwealth* v. *Pratt*, 407 Mass. 647, 652-653 (1990) (numerous bags of heroin bundled into groups of ten and wrapped together in packages of fifty); *Commonwealth* v. *Gonzales, supra* (bundling of ten packets with elastic band). Nor was there any evidence that the defendant was in possession of packaging material from which the inference of intent to distribute may be drawn. See *Commonwealth* v. *Ridge, supra* (defendant had drug paraphernalia, including cutting powder, digital scale, bag sealer, and box of small baggies); *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 427 (1985) (cutting powder, wrapping paper, and scale with cocaine residue on pan). It was uncontroverted that the packaging of the three rocks of cocaine was consistent with distribution, but there was nothing about the

packaging from which it could be inferred that the defendant was a retail seller. Indeed, the quantity was so small that an average user could consume the cocaine within two hours. Detective Wadlegger acknowledged that it was less than one day's supply. We conclude that the packaging of the cocaine could not support an inference that the defendant intended to distribute it.

The amount of money found on a person may imply an intent to distribute. A large amount of cash certainly is probative of an intent to distribute. See *Commonwealth* v. *Sendele, supra* at 756, 758-759 (bundles of worn bills, mostly ten- and twenty-dollar bills, but also some fifties and hundreds, totaling $33,020). Here, the $312 the defendant had on his person is not a particularly large sum. It is not unusual for law-abiding persons to carry such an amount on their person. There was no evidence that the defendant was unemployed and thus unlikely legitimately to have that amount of cash. Contrast *Commonwealth* v. *Gonzales, supra* ($167 on unemployed defendant supported inference of distribution). Detective Wadlegger did not even cite the money as a basis for his opinion. In short, there was no evidence of a nexus between the money and the cocaine the defendant possessed. See *Commonwealth* v. *Sepheus*, 82 Mass. App. Ct. at 784 & n.18 (Agnes, J., dissenting). An inference of intent to distribute may not be drawn from the money the defendant possessed.

The Commonwealth alleges that evidence of the defendant's loitering in a high crime area, and the sale of narcotics by Griffith, support an inference of intent to distribute. On the question of loitering, we note that there was no evidence that the defendant or any other person in the group had been at the store for more than two minutes. There also was no evidence that the group was engaged in any conduct that was disruptive of the store's business. As a matter of law, there was no evidence of loitering. See *Commonwealth* v. *Carpenter*, 325 Mass. 519, 520-521 (1950); *Commonwealth* v. *Pierre P.*, 53 Mass. App. Ct. 215, 218 (2001).

With respect to the so-called sale of drugs by Griffith, the record does not reflect that Griffith was selling drugs. It merely reflects that police believed he was involved in a narcotics transaction. He may have been the buyer, a point on which the

record is entirely ambiguous. But even if Griffith had made a sale of narcotics, there is no evidence that the defendant participated in the sale to any degree, such as being a lookout. Moreover, there was no evidence that he even knew that a drug sale had taken place or that he knew Griffith. The record is entirely silent about the group's dynamic. The Commonwealth "cannot rely on evidence that merely places the defendant at the scene of the crime and shows him to be in association with the principals. Rather, the Commonwealth must present additional evidence which implicates the defendant in the crime." *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 411 (1986). That was not done here.

The Commonwealth's reliance on *Commonwealth* v. *DeJesus*, 48 Mass. App. Ct. 911, 912 (1999), for the proposition that "[p]eople do not ordinarily engage in . . . crimes in the presence of someone who is not a collaborator," is misplaced. The ellipses in the Commonwealth's brief omits a critical word: "repetitive." In *DeJesus* there was considerable evidence that the defendant was a participant in a drug distribution venture that was operating out of a small apartment. The defendant had acted as a lookout, there were many short-time visitors to the apartment and, when police searched the apartment, the defendant was in a bedroom with three other men surrounded by drugs, cash, and packaging materials. *Id.* at 911-912. In the present case there is no evidence of any participation by the defendant in whatever it was Griffith did, much less in "repetitive" criminal behavior. No inference properly may be drawn from Griffith's conduct that the defendant intended to distribute the cocaine on his person.[1]

The Commonwealth also contends that an inference of intent to distribute may arise from the absence of any smoking device on the defendant's person. The Commonwealth cites several cases where the absence of a smoking device, together with other factors discussed above, supported an inference of intent to distribute. This inference is usually guided by expert testimony, as here, that the presence of a smoking device is consistent with personal use, and the absence of such a device is consistent with

---

[1]There was no evidence that the defendant just had sold some drugs, from which it could be inferred that he intended to sell more drugs. See *Commonwealth* v. *Clark*, 446 Mass. 620, 624 (2006).

distribution. In all the cases relied on by the Commonwealth there were other factors besides the absence of a smoking device. See *Commonwealth* v. *Evans*, 436 Mass. 369, 376-377 (2002); *Commonwealth* v. *Gollman*, 436 Mass. 111, 113, 116 (2002); *Commonwealth* v. *Bush*, 71 Mass. App. Ct. 130, 136-137 (2008); *Commonwealth* v. *Labitue*, 49 Mass. App. Ct. 913, 914 (2000). The closest case, *Commonwealth* v. *Bush, supra,* involved the recovery of 2.4 grams of crack cocaine from the defendant's bedroom, described by the Commonwealth's expert in that case as "an amount held by small drug dealers, and . . . an unusually high amount for personal use." In addition, there was surveillance evidence that revealed a "high level of [short-duration] vehicular and pedestrian traffic" to the defendant's apartment building, consistent with distribution. 71 Mass. App. Ct. at 137. The *Bush* case is readily distinguishable from the present case.

From these cases we conclude that although the absence of a smoking device may support an inference of an intent to distribute, it is a weak inference, particularly in the absence of other factors. Detective Wadlegger acknowledged that the absence of a smoking device was not determinative of the question of distribution, which he said was dependent on the circumstances of the particular case. He testified that he had arrested people for simple possession of an amount of crack cocaine comparable to what was found on the defendant even where no smoking device was found. Of greater significance is the absence of drug paraphernalia consistent with distribution that was *not* found on the defendant, including but not limited to pagers, cellular telephones, scales, ledgers, cutting powder, and packaging material. See *Commonwealth* v. *Caraballo*, 81 Mass. App. Ct. 536, 542 n.6 (2012); *Commonwealth* v. *Ridge*, 37 Mass. App. Ct. at 945; *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. at 427.

The final piece of evidence on which the Commonwealth relies is Detective Wadlegger's opinion testimony. On direct examination the prosecutor kept Wadlegger within appropriate limits of expert testimony in drug cases. He asked questions that called for generalizations, particularly about packaging and the use of smoking devices by users. He avoided questions that called for Wadlegger's specific views about the defendant's

intent. See *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579-582 (1998). See also *Commonwealth* v. *Wilson*, 441 Mass. 390, 401 (2004). On cross-examination, trial counsel introduced the forbidden fruit, asking why Wadlegger thought the defendant was "a dealer." He asked Wadlegger to "*directly* express his views on the defendant's guilt" (emphasis in original). *Commonwealth* v. *Tanner*, *supra* at 579. Wadlegger's answer, which was not responsive, was even more than counsel had bargained for.

It had a particularly "pernicious aspect." *Commonwealth* v. *Acosta*, 81 Mass. App. Ct. 836, 843 (2012). In a seemingly deliberate attempt to inject prejudice into the proceedings, Detective Wadlegger explained that police were in the area on a tip that the defendant had a gun and was selling crack cocaine, information that Officer Lopes judiciously avoided and that the judge admitted for a limited purpose. Detective Wadlegger then seized an opportunity provided by trial counsel to drive the point home. He expressed his "expert" opinion that the defendant was a dealer. Although trial counsel is partly to blame for providing something of an opportunity, Wadlegger should have confined his testimony to well-established limits for expert testimony in drug cases and avoided expressing a view that our jurisprudence unequivocally forbids as unfair. He should have known that his testimony was limited to an explanation for the benefit of the fact finder that certain pieces of evidence under consideration were consistent with distribution. See *Commonwealth* v. *Wilson*, *supra*; *Commonwealth* v. *Acosta*, *supra*; *Commonwealth* v. *Tanner*, *supra*. The informant's tip and Wadlegger's personal opinion as to guilt clearly were not within the scope of that opinion. Rather, they were strictly off limits.

Although the answer was improper, trial counsel failed to move to strike the answer. We will discuss these missteps later. As a result, Detective Wadlegger's answer became evidence in the case. The answer, essentially an averment that the defendant was a dealer, provided the evidence that allowed the judge properly to deny the motion for a required finding of not guilty. Contrast *Commonwealth* v. *Evans*, 436 Mass. 369, 376-377 (2002); *Commonwealth* v. *Gollman*, 436 Mass. 111, 116 (2002). There was no error.

3. *Right of confrontation.* The defendant contends that Detective Wadlegger based his opinion in part on inadmissible hearsay provided by a "reliable informant," in violation of the defendant's Sixth Amendment right of confrontation. The defendant relies, incorrectly, on *Williams* v. *Illinois*, 132 S. Ct. 2221, 2232-2244 (2012) (plurality opinion) (Alito, J.), and *Bullcoming* v. *New Mexico*, 131 S. Ct. 2705, 2713, 2716 (2011). He did not raise this issue below, or in his brief filed with the Appeals Court. The Appeals Court considered the question sua sponte. See *Commonwealth* v. *Sepheus*, 82 Mass. App. Ct. at 771; *id.* at 773 (Milkey, J., concurring); *id.* at 786-787 (Agnes, J., dissenting). "It is debatable whether the Appeals Court should have reached the question . . . . Inasmuch as the Appeals Court addressed the issue and we granted the defendant's application for further appellate review, it is appropriate for us to consider it as well, despite the Commonwealth's objection," which is well taken. *Commonwealth* v. *Wotan*, 422 Mass. 740, 741 (1996).

There are two parts to the defendant's argument. First, Detective Wadlegger testified that a basis for his opinion was the information provided by a "reliable informant." Wadlegger specified earlier that the informant told police that the defendant was in the neighborhood selling drugs. It is well settled that the disclosure by an expert of a hearsay basis for his opinion, properly limited by the judge, does not serve as an admission of the hearsay for the truth of the matter, but solely as a basis for his opinion. See *Commonwealth* v. *Brown*, 449 Mass. 747, 768-769 & n.41 (2007); *Commonwealth* v. *Jaime*, 433 Mass. 575, 578 n.1 (2001) (jury properly instructed that hearsay basis for expert opinion not admitted for truth of matter). In a jury-waived or nonjury case, the judge need not expressly instruct himself. *Care & Protection of Rebecca*, 419 Mass. 67, 83 (1994); *Nancy P.* v. *D'Amato*, 401 Mass. 516, 524-525 (1988). This is because we presume that the judge "correctly instructed himself" on the law of evidence. See *Commonwealth* v. *Ortiz*, 431 Mass. 134, 141 (2000), quoting *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 568 (1933); *Commonwealth* v. *Batista*, 53 Mass. App. Ct. 642, 648 (2002). Because the evidence was not admitted for the truth of the matter, the Sixth Amendment was not

implicated. See *Williams* v. *Illinois*, 132 S. Ct. at 2240, quoting *Crawford* v. *Washington*, 541 U.S. 36, 59 n.9 (2004); *Commonwealth* v. *Thomas*, 448 Mass. 180, 188 (2007); *Commonwealth* v. *Pelletier*, 71 Mass. App. Ct. 67, 70-73 (2008).

Second, there was no Sixth Amendment violation by reason of Detective Wadlegger's consideration of hearsay information, that is, information provided by the "reliable informant." Wadlegger's opinion was not hearsay because as the declarant of the opinion he testified at trial and was thus subject to cross-examination. See *Commonwealth* v. *Greineder*, 464 Mass. 580, 584, cert. denied, 134 S. Ct. 166 (2013), quoting *Commonwealth* v. *Barbosa*, 457 Mass. 773, 783-784 (2010), cert. denied, 131 S. Ct. 2441 (2011). The defendant cannot claim a Sixth Amendment violation where he had the opportunity to expose flaws in the basis of Wadlegger's opinion. *Barbosa*, 457 Mass. at 785-786. There was no error.

*4. Ineffective assistance of counsel.* The defendant argues that trial counsel was ineffective for failing to object and to move to strike that portion of Detective Wadlegger's testimony where he said that he relied on the information provided by the "reliable informant." The defendant did not raise this issue in his brief in the Appeals Court. However, because it was considered in the Appeals Court, *Commonwealth* v. *Sepheus*, 82 Mass. App. Ct. at 787 n.20 (Agnes, J., dissenting), we will address the matter. See *Commonwealth* v. *Wotan, supra.*

The preferred course for raising a claim of ineffective assistance of counsel is to file a motion for a new trial, supported by affidavit. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 810 (2006), quoting *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999). An exception, which applies here, involves a claim of ineffective assistance where "the factual basis of the claim appears indisputably on the trial record." *Zinser, supra* at 811, quoting *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). The standard is the same: "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, . . . whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

Here, counsel inquired of Detective Wadlegger as to matters that went beyond even where the prosecutor could venture. He asked Wadlegger to "*directly* express his views on the defendant's guilt" (emphasis in original). *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 579. This was well beyond the generalized testimony that Wadlegger was permitted to give. *Id.* See *Commonwealth* v. *Acosta*, 81 Mass. App. Ct. at 842. We see no reasonable strategic reason for the manner in which trial counsel conducted this portion of his cross-examination. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). Counsel also should have moved to strike Wadlegger's nonresponsive answer. In these circumstances, such a motion should have been allowed. This incursion into prohibited territory provided the Commonwealth with the proof it needed to survive a motion for a required finding of not guilty as to the element of intent to distribute. Without Wadlegger's opinion that the defendant was a drug dealer, the Commonwealth's proof depended entirely on the inference that buyers of crack cocaine generally have a smoking device on their person and sellers do not. That inference, without more, was weak; and Wadlegger's cross-examination testimony on this point (he had arrested persons without a smoking device and charged them with simple possession) further weakened the inference such that the Commonwealth's evidence in the aggregate could not support a finding of guilty on the element of intent to distribute. The conviction must be reversed.

However, it does not necessarily follow that the defendant is entitled to a dismissal of so much of the indictment that alleges the intent to distribute. Generally, the relief afforded a successful claim of ineffective assistance of counsel is a new trial. See, e.g., *Commonwealth* v. *Tyree*, 455 Mass. 676, 704-705 (2010); *Commonwealth* v. *Segovia*, 53 Mass. App. Ct. 184, 194 (2001). As discussed above, the motion for a required finding of not guilty was properly denied. Contrast *Commonwealth* v. *Frisino*, 21 Mass. App. Ct. 551, 555-556 (1986). The prosecutor did not object to trial counsel's request for the name of the informant, which could be construed as some indication that the informant was not the confidential type whose identity the Commonwealth would seek to protect by asserting the informant privilege. See

*Commonwealth* v. *Douzanis,* 384 Mass. 434 (1981). We are not able to determine from the trial record whether the Commonwealth would call the informant to testify at a retrial to offer competent testimony that the defendant had been selling crack cocaine for purposes of supporting an inference that he intended to sell the three rocks of crack cocaine that he had on his person. If it does, this could be sufficient, with the other evidence, to allow the case to go to the jury. See *Commonwealth* v. *Clark,* 446 Mass. 620, 624 (2006). Because we discern no error in the conviction as to the crime of possession of cocaine, on remand the Commonwealth shall have the option of moving to have the defendant sentenced on the lesser included offense of possession of cocaine, or of retrying the defendant for possession of cocaine with intent to distribute. See *Commonwealth* v. *Bell,* 460 Mass. 294, 309-310 (2011).

*So ordered.*