NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1094

COMMONWEALTH

vs.

CARLOS RIOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Carlos Rios, was indicted on one count of unlawful possession of a firearm as a career criminal, see G. L. c. 269, §§ 10 (a) & 10G (b); one count of unlawful possession of ammunition as a career criminal, see G. L. c. 269, §§ 10 (h) & 10G (b); two counts of assault and battery on a family or household member, see G. L. c. 265, § 13M (a); one count of unlawful possession of a class B substance (cocaine), see G. L. c. 94C, § 34; one count of trafficking in cocaine in an amount between eighteen and thirty-six grams, see G. L. c. 94C, § 32E (b) (1); and one count of possession of a firearm in the commission of a felony, see G. L. c. 265, § 18B.[1]  The defendant

_____

[1] The Commonwealth filed a nolle prosequi of the count of the 2019 indictment alleging possession of cocaine, and all of the remaining counts of the indictments were tried before a jury.

now appeals from the denial of his motion for a required finding on the charges of trafficking in cocaine and possession of firearms and ammunition.  We affirm.

Background.  For purposes of the sufficiency challenge, we summarize the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Alvarado, 93 Mass. App. Ct. 469, 471 (2018), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  The defendant was at home with his girlfriend when a dispute occurred between the defendant and another person.  When the girlfriend stepped in between the two, the defendant hit her several times in the face.  The girlfriend called the police and the responding officers arrested the defendant.  At the time of the arrest, the defendant was wearing a backpack.  The officers asked him to remove it so they could handcuff him, and the backpack was subsequently searched incident to the arrest and the defendant was pat frisked.  While conducting the patfrisk one of the officers discovered a "golf ball-size glassine baggie containing a white powdery substance." The officer searching the backpack found "a red glassine baggie that contained ammunition" and a box with a firearm and magazines inside.  The arresting officers ran the defendant's name through a database and found that he did not have a license to carry a firearm or a firearm identification (FID) card.  The

2

substance in the baggie, which the officers suspected was cocaine, was sent to a lab for testing.

At trial, a laboratory technician testified that the substance in the baggie was cocaine weighing 20.2235 grams. The Commonwealth also offered the testimony of Officer Ryder, whose expert testimony, if credited by the jury, established the following facts. Possession of twenty grams of cocaine was more consistent with the intent to distribute than the intent to use, as users typically have only enough money to purchase about one-half of one gram at a time. The cocaine was likely purchased for $1,200 to $1,300 and could be resold on the street for $2,000. Because the drug community is secretive and insular, only a trusted person would likely be able to obtain that volume of cocaine. Users (as opposed to dealers) typically carry items such as a rolled-up bill, straw, razor blade, or credit card with which to arrange and snort cocaine. No such implements were found on the defendant or in the backpack. Finally, dealers often also possess firearms to protect themselves from theft.

Discussion. 1. Trafficking. As relevant here, "[t]here are five elements to the charge of trafficking in [cocaine] that the Commonwealth must prove beyond a reasonable doubt, namely that (1) the defendant knowingly or intentionally (2) possessed (actually or constructively) (3) [eighteen] grams or more [but

less than thirty-six grams] (4) of [cocaine] (5) with the specific intent to distribute it."  Commonwealth v. Ortega, 441 Mass. 170, 174 n.7 (2004).  See G. L. c. 94C, § 32E (b) (1). The defendant asserts that the judge's denial of his motion for a required finding of not guilty was erroneous because the Commonwealth did not meet its burden of proof regarding intent to distribute.

"When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Polanco, 92 Mass. App. Ct. 764, 771 (2018), quoting Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). Factors relevant to proving intent to distribute include the amount of money found on the defendant's person, evidence of involvement in a drug transaction, whether the transaction occurred in an area known for drug sales and use, the absence of drug paraphernalia, the amount of drugs recovered, the manner in which the drugs are packaged, and the testimony of an expert witness.  See Commonwealth v. Richardson, 479 Mass. 344, 360-362 (2018); Commonwealth v. Sepheus, 468 Mass. 160, 164-169 (2014). Additionally, "[a] person's . . . intent . . . is a matter of fact, which may not be susceptible of proof by direct evidence."

4

Richardson, supra at 360, quoting Commonwealth v. Ellis, 356 Mass. 574, 578-579 (1970).

Here, the Commonwealth offered testimony that officers found twenty grams of cocaine in the defendant's possession. In addition, there was evidence regarding the street retail value of the amount found, that this amount was more consistent with distribution than personal use, that there were no implements of personal use in the defendant's possession, and that dealers often carried firearms to guard against theft. This evidence was sufficient to prove intent to distribute. See Sepheus, 468 Mass. at 164-169.

The defendant asserts that evidence indicative of distribution (such as money or scales) was lacking, and that there was no evidence that the defendant himself used drugs or that the drugs discovered were part of a bigger stash. The claim is unavailing as it was for the jury to decide what weight to accord the evidence. See Richardson, 479 Mass. at 362. Considering all of the evidence -- and the expert testimony in particular -- in the light most favorable to the Commonwealth, there was sufficient evidence to prove intent to distribute. See Sepheus, 468 Mass. at 164-169.

2. Possession of firearm and ammunition. For the first time on appeal, the defendant asserts that it was the Commonwealth's burden to prove that he did not have a license to

5

carry the firearm or ammunition.  The defendant further asserts that the judge's instruction that the jury need not consider licensure was in error because the Commonwealth must prove, among other things, that the defendant did not have a valid license to carry the firearm or possess the ammunition at the time the gun and ammunition were found, and the instruction failed to inform the jury of this essential element of the offenses.[2]

While this case was pending on appeal, the Supreme Judicial Court decided Commonwealth v. Guardado, 491 Mass. 666 (2023). Relying on New York State Rifle & Pistol Ass'n. v. Bruen, 142 S. Ct. 2111 (2022), the Supreme Judicial Court held in Guardado, supra at 686-694, that (1) the defendant's failure to raise the issue of the burden of proof of licensure was excused under the "clairvoyance" exception to our usual preservation requirements, (2) absence of licensure was an element of the offense of unlawful possession of a firearm, (3) the Commonwealth carried the burden of proving absence of licensure beyond a reasonable

---

[2] Without objection, the judge instructed the jury that "The law provides for exemptions for criminal responsibility for possession of a firearm if the defendant demonstrates that he possessed the weapon in his personal residence or place of business, and/or if the defendant demonstrates that he had a lawfully issued license to carry such a firearm.  In the present case, however, there is no evidence that the defendant possessed a valid firearm's license.  So, for this reason, the issue of license is not relevant to your deliberations."

doubt, (4) the jury should be so instructed, (5) the failure to provide evidence of an absence of licensure and to instruct that the Commonwealth bore the burden of proof on this element rose to the level of a violation of the defendant's right to due process, and (6) its decision was applicable to all cases pending in the trial court or the appellate courts since Bruen, supra.  Applying these holdings to this case, we conclude that evidence of non-licensure was an element of the Commonwealth's case for unlawful possession of a firearm and ammunition.  We review the erroneous instruction, which relieved the Commonwealth of its burden of proof, to determine whether the error was harmless beyond a reasonable doubt.  See Commonwealth v. Bookman, 492 Mass. 396, 401 (2023); Commonwealth v. Hinckley, 422 Mass. 261, 266-267 (1996).

As with other constitutional errors, "the results of our review are determined by the circumstances of each case." Commonwealth v. Hoyt, 461 Mass. 143, 155 (2011), quoting Commonwealth v. Mahdi, 388 Mass. 679, 697 (1983).  "The 'essential question' in analyzing harmlessness beyond a reasonable doubt is 'whether the error had, or might have had, an effect on the [fact finder] and whether the error contributed to or might have contributed to the [findings of guilty].'" Commonwealth v. Vasquez, 456 Mass. 350, 360 (2010), quoting Commonwealth v. Perrot, 407 Mass. 539, 549 (1990).  "The inquiry

7

'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'"  Vasquez, supra at 361, quoting Sullivan v. Louisiana, 508 U.S. 275, 279 (1993).  The Commonwealth bears the burden of demonstrating that the error was harmless.  Vasquez, supra at 362.

Looking "to the basis on which 'the [fact finder] actually rested its verdict,'" the Commonwealth has met its burden here. Vasquez, 456 Mass. at 360-361, quoting Sullivan, 508 U.S. at 279, and Yates v. Evatt, 500 U.S. 391, 404 (1991).  The evidence at trial was sufficient to establish that the defendant did not have a license to carry a firearm or possess ammunition.[3]  The evidence was unchallenged; no question of admissibility, credibility, weight, or reliability was presented.  See Bookman, 492 Mass. at 401.  In closing argument, the defendant acknowledged that "[i]f he had a weapon he's guilty of the licensing provision."  Under these circumstances, we are sure

---

[3] After Bookman was decided, we requested supplemental briefing. In response to our order, the defendant has argued that the evidence of nonlicensure was insufficient because it was improperly admitted.  We do not consider the argument.  The sufficiency of the evidence "is to be measured upon that which was admitted in evidence without regard to the propriety of the admission."  Sepheus, 468 Mass. at 164, quoting Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010).

that the erroneous instruction did not influence the verdicts in any respect.

                                    Judgments affirmed.

                                    By the Court (Sullivan,
                                      Desmond & Singh, JJ.[4]),

                                    *Joseph F. Stanton*

                                    Clerk


Entered:  August 15, 2023.

---

[4] The panelists are listed in order of seniority.